261 F.3d 127 (2nd Cir. 2001)
 MONTY NEIL WEINSTEIN, (A/K/A MYRON NEIL WEINSTEIN) PLAINTIFF-APPELLANT,
v.
MADELEINE K. ALBRIGHT, INDIVIDUALLY AND AS UNITED STATES SECRETARY OF STATE, DONNA E. SHALALA, INDIVIDUALLY AND AS UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES, OLIVIA A. GOLDEN, INDIVIDUALLY AND AS ASSISTANT SECRETARY, ADMINISTRATION FOR CHILDREN AND FAMILIES, DAVID GRAY ROSS, INDIVIDUALLY AND AS COMMISSIONER, FEDERAL OFFICE OF CHILD SUPPORT ENFORCEMENT, NEW YORK STATE OFFICE OF
CHILD SUPPORT COLLECTIONS, JOHN DOES 1-10; JANE DOES 1-10; ABC AGENCIES 1-5, ABC ENTITIES 1-5, DEFENDANTS-APPELLEES.
 Docket No. 00-6290
August Term, 2000
 UNITED STATES COURT OF APPEALS For the Second Circuit
 Argued: April 25, 2001
Decided: August 10, 2001
 
 Plaintiff-Appellant Monty Weinstein appeals from a judgment of the District Court for the Southern District of New York (Koeltl, J.), dated August 14, 2000, denying plaintiff's motion for a preliminary injunction and dismissing plaintiff's complaint in its entirety. Plaintiff challenges the government's denial of his passport application and its revocation of his previously issued passport because he was certified as owing more than $5000 in past due child support. Affirmed.[Copyrighted Material Omitted]
 Monty Neil Weinstein, appearing pro se.
 David S. Jones, Assistant United States Attorney for the Southern District of New York, (Gideon A. Schor, on the brief), for Appellees Madeleine K. Albright, Donna E. Shalala, Olivia A. Golden, & David Gray Ross.
 Michael S. Belohlavek, Deputy Solicitor General & Melanie L. Oxhorn, Assistant Solicitor General, submitted a brief on behalf of Appellee New York State.
 Before: Jacobs, Parker & Katzmann, Circuit Judges.
 
 Katzmann, Circuit Judge
 I. INTRODUCTION
 
 1
 Plaintiff Monty Neil Weinstein ("Weinstein" or "plaintiff") appeals from a judgment of the District Court for the Southern District of New York (Koeltl, J.), dated August 14, 2000, denying plaintiff's motion for a preliminary injunction and dismissing plaintiff's complaint. Plaintiff's complaint alleges that 42 U.S.C. § 652(k) and 22 C.F.R. §§ 51.70(a)(8), 51.72(a) & 51.80(a)(2), which authorize the denial and revocation of a passport to an individual who is more than $5000 in child support arrears without an opportunity for a federal hearing, violate a number of his constitutional rights. We affirm the decision ofthe district court. We deny plaintiff's due process challenges because the right to pre-deprivation notice and an opportunity to contest the arrears determination before the relevant state agency is adequate to protect plaintiff's liberty interest in having a passport and traveling internationally. We further reject plaintiff's equal protection challenges.
 
 II. FACTS & PROCEDURAL HISTORY
 
 2
 On or about November 22, 1999, plaintiff applied for a new United States passport in preparation for a trip to Israel, even though his previously issued passport was not scheduled to expire until August 2000. Compl.¶ 15. On December 13, 1999, plaintiff received a letter from the United States Department of State indicating that his application for a passport was denied and that his previously issued passport was canceled because he had been certified by New York State as being more than $5000 in arrears on his child support. Compl.¶ 16, Ex. 1.
 
 
 3
 After being so informed, plaintiff initiated this action against a number of federal officials, including Madeleine Albright, then United States Secretary of State and Donna Shalala, then United States Secretary of Health and Human Services (collectively "federal defendants"), as well as the New York State Division of Child Support Enforcement[1] ("state defendant"). Plaintiff's complaint asserts that 42 U.S.C. § 652(k) and 22 C.F.R. §§ 51.70(a)(8), 51.72(a) & 51.80(a)(2), which authorize the denial of a passport application and the revocation of an existing passport for an individual who owes past due child support exceeding $5,000, violate his rights under the First, Fifth and Fourteenth Amendments of the United States Constitution, and constitute a bill of attainder in violation of Article I, § 9. The complaint further asserts a pendent state law claim for intentional infliction of emotional distress. Plaintiff seeks damages from defendants as well as a declaratory judgment that the statute and regulations are unconstitutional on their face and as applied to him.
 
 
 4
 Plaintiff moved for a preliminary injunction to bar defendants from denying him a passport. Both federal and state defendants opposed the motion for a preliminary injunction and moved to dismiss the complaint under Fed.R.Civ.P. Rule 12(b)(6). State defendant alternatively moved for summary judgment under Rule 56. Plaintiff then cross-moved for summary judgment. In a thorough opinion, the district court denied plaintiff's motion for a preliminary injunction and granted defendants' motions to dismiss and alternatively state defendant's motion for summary judgment. See Weinstein v. Albright, No. 00 Civ. 1193 (JGK), 2000 WL 1154310, 2000 U.S. Dist. LEXIS 11604 (S.D.N.Y., Aug. 14, 2000).
 
 III. STANDARD OF REVIEW
 
 5
 As the case against federal defendants was dismissed below on defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we take as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of plaintiff. See IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1058 (2d Cir. 1993). Dismissal is appropriate only if "`it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief.'" Tarshis v. Riese Org., 211 F.3d 30,35 (2d Cir. 2000)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). When considering motions to dismiss the claims of plaintiffs proceeding pro se, courts in this Circuit are instructed to construe the pleadings liberally. See, e.g., Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999). This is especially true when dealing with civil rights complaints like this one. See id.; Tarshis, 211 F.3d at 35.
 
 
 6
 As noted, the state defendant also moved for summary judgment and the district court alternatively granted this motion. We review a district court's grant of summary judgment de novo, taking all factual inferences in favor of the non-moving party. See Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000). Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. See Fagan v. New York State Electric & Gas Corporation, 186 F.3d 127, 132 (2d Cir. 1999). When parties move for summary judgment against pro se litigants, this court has required that the movant or the district court provide notice to the pro se party which includes "a short and plain statement that all assertions of material fact in the movant's affidavits will be taken as true by the district court unless the pro se litigant contradicts those factual assertions in one or more affidavits made on personal knowledge containing facts that would be admissible in evidence or by submitting other materials as provided in Rule 56(e)." McPherson v. Coombe, 174 F.3d 276, 282 (2d Cir. 1999). In this case it is undisputed that state defendant provided such notice to the plaintiff in this case.
 
 
 7
 We affirm the district court's grant of summary judgment to the state defendant and also affirm the grant of federal defendants' motion to dismiss.
 
 IV. DISCUSSION
 
 8
 The information with respect to plaintiff's child support arrears was collected by the New York City Administration for Children's Services ("ACS") and entered into a statewide Child Support Management System ("CSMS") which maintains a running tabulation of the arrears. Wootan Aff. ¶¶ 6, 7, Boyle Aff. ¶¶ 4-6. According to an affidavit from a state defendant employee, on August 27, 1999, a "Special Notice" of the determination of child support arrears was sent to all obligors who, like plaintiff, owed more than $5000 in child support payments and therefore qualified for passport suspension.[2] Boyle Aff. ¶ 7. The CSMS records indicate that the Special Notice was sent to plaintiff at his last address. A generic "Special Notice," without a name or address, was provided to the district court and is in the record on appeal. The Special Notice states that the recipient's past due child support is in excess of $5000. Furthermore, the "Important Information" attachment to the Special Notice specifically advises: "Also, if the amount you owe exceeds $5,000, the United States Secretary of State will refuse to issue a passport to you and may revoke, restrict or limit a passport which was previously issued." The "Important Information" attachment informs the obligor of the right to an administrative review, including the right to an in-person conference, of the determination of arrears. It also advises the obligor of the right to seek state court review of an adverse administrative decision pursuant to Article 78 of the N.Y.C.P.L.R.
 
 
 9
 Plaintiff has never challenged the state's determination of arrears, either administratively or in a state court Article 78 proceeding, despite being counseled by state defendant employees that he can still do so at any time. Because plaintiff was determined to be more than $5,000 in arrears, CSMS automatically transmitted certification of such to the U.S. Department of Health and Human Services ("HHS") on November 12, 1999. Wootan Affidavit ¶ 7, Boyle Affidavit ¶ 9. Pursuant to the statutes and regulations discussed below, HHS then passed along such information to the Secretary of State, which in turn denied plaintiff's application for a new passport and revoked his previously issued passport.
 
 
 10
 The statutory and regulatory framework for these actions taken by defendants is found at 42 U.S.C. §§ 652(k) & 654(31) and 22 C.F.R. §§ 51.70(a)(8) & 51.72(a). One federal statute requires each state to establish a procedure for certifying to HHS the states' determinations that individuals are more than $5000 in arrears on child support payments; the states' procedures must additionally ensure that "each individual [obligor] concerned is afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination." See 42 U.S.C. 654(31)(a). 42 U.S.C. § 652(k)(1) provides that "[i]f the Secretary [of HHS] receives a certification by a State agency in accordance with the requirements of section 654(31) of this title that an individual owes arreages of child support in an amount exceeding $5,000, the Secretary shall transmit such certification to the Secretary of State for action (with respect to denial, revocation, or limitation of passports) pursuant to paragraph (2)." Under § 652(k)(2), the "Secretary of State shall, upon certification by the Secretary [of HHS] transmitted under paragraph (1), refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual."
 
 
 11
 According to regulations issued by the Secretary of State, "[a] passport, except for direct return to the United States, shall not be issued in any case in which the Secretary of State determines or is informed by competent authority that:... (8) The applicant has been certified by the Secretary of Health and Human Services as notified by a State agency under 42 U.S.C. 652(k) to be in arrears of child support in an amount exceeding $5,000.00." 22 C.F.R. § 51.70(a). Regarding revocation, the regulations provide that "[a] passport may be revoked... where... [t]he national would not be entitled to issuance of a new passport under § 51.70." 22 C.F.R. 51.72(a).
 
 
 12
 Plaintiff has presented a litany of constitutional challenges to the above-referenced statutes and regulations and the way they were implemented in his case. With respect to plaintiff's claims that the laws violate his First Amendment rights, contravene substantive due process in violation of the Fifth and Fourteenth Amendments, and that the laws constitute a bill of attainder in violation of Article I, § 9 of the Constitution, we dismiss such claims for the reasons ably articulated by the district court. See Weinstein, 2000 WL 1154310 at *5-*8, 2000 U.S. Dist. LEXIS 11604 at *16-*26. We similarly adopt the district court's rationale for dismissing plaintiff's claims that he has been targeted for selective prosecution.[3] See id., 2000 WL 1154310 at *9, 2000 U.S. Dist. LEXIS11604 at *26. With regard to plaintiff's procedural due process and equal protection challenges, however, we see the need to inquire further.
 
 A. Procedural due process challenge
 
 13
 Plaintiff alleges that 42 U.S.C. § 652(k) and 22 C.F.R.§§ 51.70(a)(8), 51.72(a) & 51.80(a)(2) are unconstitutional because they infringe upon his protected liberty interest to travel overseas without providing him due process. Pursuant to the Due Process Clauses of the Fifth and Fourteenth Amendments, neither the states nor the federal government may deprive an individual of property or liberty without due process. In order to prevail on a due process claim, a claimant must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived that party of the interest without due process of law. See Local 342 v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994).
 
 
 14
 In this case, plaintiff's right to international travel, which is undoubtedly restricted by the denial of his passport application and revocation of his previously issued passport,[4] is a protected liberty interest, a conclusion not disputed by defendants. See Califano v. Aznavorian, 439 U.S. 170, 175-6 (1978) (discussing Kent v. Dulles, 357 U.S. 116 (1958) & Aptheker v. Secretary of State, 378 U.S. 500 (1964)); accord DeNivea v. Reyes, 966 F.2d 480, 485 (9th Cir. 1992). The question before the court is whether the procedures allowed for by the statutes and regulations are sufficient to protect plaintiff's interest.
 
 
 15
 The Due Process Clause does not demand that the government provide the same kind of procedural protections for every deprivation of a property or liberty interest. See Mathews v. Eldridge, 424 U.S. 319, 334 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.") (internal quotation marks omitted, alteration in original). At a minimum, due process requires that the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).
 
 
 16
 Plaintiff asserts that he was not provided an opportunity to contest, before any federal agency, the decisions to deny his passport application and revoke his previously issued passport, and argues that it is both unfair and unconstitutional to restrict his right to travel without any opportunity to contest at the federal level. For those certified by states as owing more than $5000 in past due child support, it is true that the statute and regulations do not provide for pre-deprivation notice or an opportunity to contest before a federal agency.[5] However, despite the unavailabilityof federal review, we agree with the district court that the statutes and regulations comport with due process because they "require that persons, such as the plaintiff, be provided [by the applicable state] with notice and an opportunity to be heard before a passport is denied or revoked based on arrearages in child support payments." Weinstein, 2000 WL 1154310 at *5.
 
 
 17
 Before a state certifies to HHS that an individual is more than $5000 in child support arrears, it is required by statute to ensure that each individual is "afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination." 42 U.S.C. § 654(31)(A). The question is whether the statute's scheme of mandating that states provide procedural protections is adequate to protect plaintiff's liberty interest in international travel, which is controlled by the federal government's power to issue and revoke passports.
 
 
 18
 Initially, we agree with the district court that, "there is no authority supporting the plaintiff's contention that due process can only be satisfied if a federal agency rather than a state or city agency provides the notice and hearing." Weinstein, 2000 WL 1154310 at *5.[6] The key inquiry in evaluating whether the government provides due process is whether the class of persons affected are given notice and provided with an opportunity to contest the relevant determination "at a meaningful time and in a meaningful manner," see Armstrong v. Manzo, 380 U.S. 545, 552 (1965), and not which arm of the government provides such procedures. The statutory framework challenged here assures that persons such as plaintiff will be afforded notice and an opportunity to be heard at a meaningful time, that is, before a state agency certifies the arrears to the federal government and thus before the any action is taken on the passport. Moreover, the framework assures plaintiff a meaningful forum before the state agency, because it is that state agency which determines whether the person will be certified to HHS and thus subject to the punitive provisions of 42 U.S.C. § 652(k).[7]
 
 
 19
 Crucial to our holding dismissing plaintiff's procedural due process challenge is the understanding that requiring the federal government to provide persons in plaintiff's position with an opportunity to respond would be futile.[8] At this point we must distinguish between the statutory and regulatory provisions regarding the denial of passport applications and those governing the revocation of existing passports. With regard to the denial of passport applications, the futility of requiring federal hearings is easy to see. Under § 652(k)(2), the "Secretary of State shall, upon certification by the Secretary [of HHS] transmitted under paragraph (1) [that an individual is in child support arrears of more than $5000], refuse to issue a passport to such individual" (emphasis added). Under the statute then, the executive branch's role in denying the passport applications of such persons is purely ministerial. After receiving certification from the applicable state agency, HHS passes such certification along to the U.S. State Department, which then has no choice but to deny the passport application of individuals so certified. Because of the ministerial role played by the executive branch, providing for a federal hearing for such persons would be futile because the crucial determination is made not by the federal government, but by the applicable state agency. As noted, under 42 U.S.C. § 654(31), such state agencies must provide notice to those they determine owe more than $5000 in past due child support, including notice that such determination will result in the denial of any passport application, and an opportunity to contest such a determination before the state agency.[9] There is no question then, withrespect to the denial of passport applications for those situated like plaintiff, that the statute provides for timely notice and a meaningful opportunity to contest, and therefore comports with due process.[10]
 
 
 20
 Our analysis of the procedural due process challenge is somewhat different with respect to the revocation of existing passports. Unlike the mandatory language which commands the State Department to deny passport applications to those certified as owing more than $5000 in past due child support, the statute's direction is not as certain with respect to the revocation of existing passports of such persons. 42 U.S.C. § 652(k)(2) states that the Secretary of State "shall... refuse to issue a passport" to an individual who has been certified as being more than $5000 in child support arrears, but "may revoke... a passport issued previously to such individual" (emphasis added). Tracking the statute's language, 22 C.F.R. § 51.70(a) states that "[a] passport... shall not be issued" while § 51.72 provides that "[a] passport may be revoked."
 
 
 21
 As federal defendants acknowledge, the statute's use of the verb "may" can be read to suggest that the State Department has discretion in deciding who among the class of persons certified as being in arrears in their child support will have their passport revoked. See June 22, 2001 Letter brief of federal defendants at 2; Rastelli v. Warden, Metro. Corr. Ctr., 782 F.2d 17, 23 (2d Cir. 1986) ("The use of a permissive verb -- `may review' instead of `shall review' -- suggests a discretionary rather than mandatory review process.")[11] "And when the same [statute] uses both `may'' and `shall', the normal inference is that each is used in its usual sense--the one act being permissive, the other mandatory." Anderson v. Yungkau, 329 U.S. 482, 485 (1947); accord Lopez v. Davis, 531 U.S. 230, 241 (2001); Haig v. Agee, 453 U.S. 280, 294 n.26 (1981).
 
 
 22
 Plaintiff asserts that the statute violates due process because there is nothing restricting the State Department from exercising its discretionary authority to revoke passports arbitrarily and that such an arbitrary deprivation has occurred in this case. However, there is no evidence, in this case or otherwise, that the State Department arbitrarily exercises its discretion to revoke passports of those who fit within the statute. Indeed, the evidence submitted suggests the opposite. Federal defendants have submitted a sworn declaration of the Chief of the Legal Division in the Office of Passport Policy and Advisory Services, in the Office of Passport Services, Bureau of Consular Affairs, within the State Department. The declaration advises that the State Department determined immediately after the passage of the statutory provisions in question that it does not have the resources to revoke the passports of all of those who are certified as owing more than $5000 in child support. See July 11, 2001 Declaration of Sharon Palmer-Royston ¶ 4, submitted as part of the July 13, 2001 Letter brief of federal defendants. Instead, the State Department has created a policy under which the only individuals whose existing passports will be revoked as a result of state certifications of child support arrears are those individuals who come to the attention of the State Department by applying for new passport services, such as a new passport. See id ¶ 2-6, referring to June 22, 2001 Letter brief of federal defendants. Plaintiff's case fits within this policy: In November, 1999 plaintiff applied for a new passport and was subsequently informed that his application for a new passport was denied and his existing passport was revoked. Compl.¶ 15.
 
 
 23
 Of course, the State Department's adoption of this policy with respect to passport revocations is itself an exercise of discretion and plaintiff could argue that such an exercise is constitutionally impermissible. However, such a challenge would be rejected under Supreme Court precedent which has allowed the Secretary of State considerable latitude in developing policies for issuing and revoking passports. Most prominently, in Haig v. Agee, the Court upheld the Secretary's promulgation and enforcement of a regulation which stated that the Secretary "may" deny passport applications and revoke existing passports, for those determined by the Secretary to be engaged in "activities abroad [which] are causing or are likely to cause serious damage to the national security or foreign policy of the United States." 453 U.S. at 286 (citing 22 C.F.R. § 51.70(b)(4) (1979)).[12] The Court noted that Congress had not specifically authorized the revocation of passports in such circumstances; rather the Secretary had promulgated the regulation pursuant to its general statutory authority to issue passports. Id. at 290.[13] The Court nonetheless upheld the Secretary's exercise of discretion in developing and enforcing the policy. The Court focused on the broad rule-making authority granted in the statute, and found that "a consistent administrative construction of that statute must be followed by the courts unless there are compelling indicationsthat it is wrong." Id. at 291 (internal quotation marks omitted). Importantly, the Court distinguished its prior decision in Kent v. Dulles, 357 U.S. 116 (1958), where it had struck down another of the Secretary's regulations regarding the issuance and revocation of passports because it was unclear whether the policy had been consistently followed and enforced. See Haig, 453 U.S. at 303 (distinguishing Kent).
 
 
 24
 The latitude that should be granted to the Secretary in creating a policy for passport revocation for those certified as being in child support arrears is arguably broader than that given in Haig, as the Secretary in this instance is acting pursuant to a specific delegation of discretionary authority from Congress. See 42 U.S.C. § 652(k)(2) (with respect to an individual who has been certified to owe more than $5000 in past due child support, the Secretary "may revoke... a passport issued previously to such individual") (emphasis added). Following the Supreme Court's decision in Haig, we find constitutionally adequate the State Department's policy of only revoking the passports of those certified as being in child support arrears when such persons apply for new passport services. We therefore find that the discretion permitted in 42 U.S.C. § 652(k)(2) and 22 C.F.R. § 51.72(a) does not require the State Department to provide hearings for those who have their passports revoked.
 
 
 25
 In sum, because the right to notice and an opportunity to contest the arrears determination before the relevant state agency is sufficient to protect the liberty interest in having a passport and traveling internationally, we deny both plaintiff's facial and as applied procedural due process challenges to the statutes and regulations.
 
 B. Equal Protection Challenge
 
 26
 While the district court addressed and correctly rejected plaintiff's claim that the laws discriminate against him based on his gender and marital status, see Weinstein, 2000 WL 1154310, *7-*8, 2000 U.S. Dist. LEXIS 11604 at *21-*23, we also read plaintiff's complaint and briefs to present a more subtle kind of equal protection challenge.[14] Plaintiff argues that there is no rational basis to deny federal hearings to persons who have been denied passports because they have been certified as being more than $5000 in child support arrears, while providing federal hearings to virtually all other classes[15] of personswhose passports are revoked and applications for passports are denied.[16]
 
 
 27
 By claiming the absence of a rational basis for the classification made by the laws, plaintiff has identified the correct standard for reviewing his equal protection challenge. Plaintiff's right to a passport and to travel internationally, while a liberty interest protected by the Due Process Clause of the Fifth Amendment, is not a fundamental right equivalent to the right to interstate travel. See Haig, 453 U.S. at 307; Califano, 439 U.S. at 176-77. Furthermore, the class of persons to which plaintiff belongs, those who are denied passports because they have been certified as owing more than $5000 in past due child support, is clearly not a suspect class. Therefore, plaintiff's equal protection challenge to the regulations will be rejected as long as the classification created therein "rationally further[s] a legitimate state interest." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Rational basis review is deferential. "Rational basis review does not pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are `plausible' reasons for Congress's choices." General Media Comm., Inc. v. Cohen, 131 F.3d 273, 286 (2d Cir. 1997). Moreover, an equal protection challenge to a government classification must be denied "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. at 285 (internal quotation marks omitted).
 
 
 28
 We find at least one rational justification for the classification created by the State Department's regulations. Specifically, the State Department could have reasonably concluded that those persons whose passports are revoked and whose passport applications are denied because they have been certified as being more than $5000 in child support arrears do not require access to the federal hearings provided to other classes of persons denied passports because those owing child support arrearsare the only class assured to have received prior notice of the passport consequences of, and an opportunity to contest, the state determination leading to the denial of the passport applications. Specifically, as reviewed above, the statute mandates that each state, before certifying to HHS the determinations that individuals owe child support in an amount exceeding $5,000, ensure that "each individual concerned is afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination." 42 U.S.C. § 654(31)(A). Thus, persons in plaintiff's position have a right to notice of the passport consequences of the state's determination of child arrears and an opportunity to contest such before a determination is made. In New York, for example, the state agency's notice to individuals who are in plaintiff's position includes an "Important Information" attachment which specifically advises: "Also, if the amount you owe exceeds $5,000, the United States Secretary of State will refuse to issue a passport to you and may revoke, restrict or limit a passport which was previously issued...." As required by the statute, New York also provides an opportunity to contest the determination as to child support arrears.
 
 
 29
 The pre-deprivation notice provided to people in plaintiff's position, advising them of the passport consequences to the state's determination of their being in arrears in child support payments and an opportunity to contest such determination, does not appear to be provided uniformly to the other classes of persons which can have their passports denied or revoked.[17] For example, under the regulations, the State Department must deny passport applications to those who are, inter alia, "subject to a court order committing him or her to a mental institution," those who are "subject of a subpoena... in a matter involving Federal prosecution for, or grand jury investigation of, a felony"; and those who have "not repaid a loan received from the United States." See 22 C.F.R. §§ 51.70(a)(3), (5), (6). It is entirely possible, even likely, that those subject to a federal subpoena, or a commitment order to a mental institution, or who have not repaid a student loan, will not have received prior notice of the possibility that such determinations will result in the denial of their applications for passports. Thus, while such persons may have the opportunity to contest the relevant determinations, for example, of a commitment to a mental institution, they will not know of the possible passport ramifications of those decisions at the time they can challenge such. Therefore, the State Department hearings provided by 22 C.F.R. §§ 51.81-.89 are the only opportunities that these other classes of persons have to contest the decisions to deny their passport applications. In sum, there is a rational basis for the State Department to provide hearings for the other classes of persons and not to provide hearings to those who have been certified as being in arrears in child support.
 
 
 30
 Plaintiff presents a further equal protection challenge to the statute and regulations. He asserts that there is no rational basis to deny the "emergency circumstances or humanitarian reasons" exception found in 22 C.F.R. § 51.71(c) to persons who, like himself, have been denied passports because they have beencertified as being more than $5000 in child support arrears. 22 C.F.R. § 51.71(a) prohibits the Department from issuing passports to those imprisoned or subject to supervised release who have been convicted of drug felonies, and who, in the commission thereof, used their passports or crossed international borders.[18] Notwithstanding such a prohibition, 22 C.F.R. § 51.71(c) states that the State Department may issue a passport when it finds that "emergency circumstances or humanitarian reasons exist."
 
 
 31
 We note that the pertinent language of 22 C.F.R. § 51.71 tracks that found in a federal statute, 22 U.S.C. § 2714. Therefore, the decision to create an emergency or humanitarian grounds exception for those convicted of certain drug felonies was made by Congress itself, not the Secretary of State. This does not mean, of course, that the law is exempt from the Constitution's requirement of equal protection. We find, however, that there exists a rational basis for Congress to provide an emergency or humanitarian grounds exception for those denied passports because of having committed certain drug offenses and not provide such exceptions to those denied passports for being in child support arrears of more than $5000.[19]
 
 
 32
 Specifically, the category of drug offenses for which persons can be denied passports under the statute is potentially broad, and Congress could have plausibly believed that circumstances could arise in which a person was technically prohibited by the law but nonetheless should be eligible to receive a passport. Consider, for example, the case of a young man who had brought a small amount of marijuana across the border and had been arrested for such and received a sentence of several years supervised release. Assume that, while such person was under supervision, his mother overseas became deathly ill. Congress could have reasonably thought that such a person should be granted a passport. And, compared with those in plaintiff's position who can remove their offending status and receive passports at any time simply by paying their child support arrears, those subject to supervised release for certain drug convictions are not similarly situated to speed up the process to receive a passport. Therefore, Congress had a rational basis to distinguish between those denied passports for certain drug offenses and those denied passports for being in child support arrears. Plaintiff's equal protection challenge is rejected.
 
 V. CONCLUSION
 
 33
 This court has considered all of the arguments raised by the parties and undertaken an intensive examination of the complex statutory and regulatory system challenged in this case. For the foregoing reasons, we hold that the statutory and regulatory scheme for denying passportapplications and revoking existing passports for those certified as being more than $5000 in child support arrears comports with due process and equal protection. Therefore, the district court's decision to grant federal defendants' motion to dismiss and the state defendant's motion for summary judgment is affirmed. The denial of plaintiff's motion for a preliminary injunction is also affirmed.
 
 
 
 NOTES:
 
 
 [1]
 The state agency was misidentified in the plaintiff's complaint as the New York State Office of Child Support Collections.
 
 
 [2]
 As noted, we affirm the district court's grant of summary judgment to state defendant. Therefore, we may rely on the uncontested affidavits submitted by state defendant.
 
 
 [3]
 Plaintiff's briefs to this court do not present any arguments appealing the dismissal of his pendent state law claim for intentional infliction of emotional distress. Such an argument is therefore waived.
 
 
 [4]
 Under federal law, and except as otherwise provided by the President, it is "unlawful for any citizen of the United States to depart from or enter... the United States unless he [or she] bears a valid United States passport." 8 U.S.C. § 1185(b)(2001).
 
 
 [5]
 22 C.F.R. § 51.80(a) provides:
 (a) The provisions of §§ 51.81 through 51.89 [setting forth notice and hearing requirements] do not apply to any action of the Secretary of State taken on an individual basis in denying, restricting, revoking or invalidating a passport or in any other way adversely affecting the ability of a person to receive or use a passport by reason of:
 ****
 (2) Refusal under the provisions of § 51.70(a)(8) [child support arrears]....
 
 
 [6]
 As noted by the government's briefs to this court, there are several instances in which state determinations can result in federal actions that restrict individuals' liberty interests where the state determinations are nonetheless unreviewable before a federal agency or court. Federal defendants brief at 18; April 27, 2001 letter brief at 1-2. For example, under 18 U.S.C. § 922(g)(1), a person who has a felony conviction entered in any court is subject to federal criminal sanctions for possessing, shipping or receiving a fireman or ammunition in interstate commerce. In Lewis v. United States, 445 U.S. 55 (1980), the Court held that it was constitutional to prosecute a person under a predecessor to § 922(g), 18 U.S.C. § 1202(a)(1), even though the individual was not permitted to challenge his predicate felony conviction which was obtained in state court in violation of his constitutional right to counsel. See id. at 65-67.
 
 
 [7]
 Plaintiff has maintained throughout the litigation that he never received the Special Notice or accompanying "Important Information" attachment. Plaintiff's brief to this court also describes as "completely ludicrous" the district court's statement that the Special Notice was mailed to him. See Weinstein, 2000 WL 1154310 at *4, 2000 U.S. Dist. LEXIS at *10. However, plaintiff offers only conclusory arguments as to why the district court's finding was erroneous and state defendant provided several affidavits which describe in detail how their records indicate that the Special Notice was indeed sent to plaintiff. Given that the district court granted state defendant's motion for summary judgment and we affirm on those grounds, we also rely on the uncontradicted affidavits which indicate that the Special Notice was sent to plaintiff. This opinion will therefore proceed on the assumption that state defendant sent the Special Notice and attachment to plaintiff's address but plaintiff never received such.
 To determine whether the due process notice requirements were met, "[t]he proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each [affected person] actually received notice." Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988). Furthermore, "[u]nder most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their... rights are in jeopardy." Id. at 650. See also Fuentes-Argueta v. INS, 101 F.3d 867, 872 (2d Cir. 1996) (noting that "courts have repeatedly upheld even the use of regular, first-class mail as a constitutionally adequate means of service."). The exceptions to this rule, see Weigner at 650 n.4, are not applicable in this case.
 
 
 [8]
 To determine what, if any, procedural protections the Constitution requires, we must consider:
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
 
 
 [9]
 Further procedural protections have been added after this litigation was initiated. On December 27, 2000 new federal regulations went into effect, requiring that each state have in place "an administrative complaint procedure... to allow individuals the opportunity to request an administrative review" in order to correct errors made by state child support enforcement agencies. See 45 C.F.R. § 303.35(a) (2001). Thus, persons such as plaintiff have ongoing opportunities to correct erroneous determinations by the state agencies. If the administrative review results in a revised state determination that the person does not owe more than $5000 in past due child support, federal defendants insist in papers submitted to this Court, a system is in place to ensure that such information is immediately relayed to HHS, and then the State Department, which then issues the requested passport. See June 22, 2001 Letter brief of federal defendants at 5.
 
 
 [10]
 There may be a caveat to this analysis, albeit one not raised in this case. We stated that the federal agencies' role in denying passports to those certified as owing more than $5000 in past due child support is purely ministerial and therefore no opportunity to respond at the federal level is required for such persons. However, there is one class of persons for whom an opportunity to respond to the federal agencies may be essential; persons who allege a claim of mistaken identity -- that the State Department wrongly concluded they were the persons who had been certified as owing child support. Federal defendants acknowledge that, in such a case, there is the possibility of error originating with the State Department. See June 22, 2001 Letter brief of federal defendants at 10 n.*. According to representations made by the State Department and relayed to this Court by counsel for federal defendants, an individual who argued that he was not the individual certified as being in arrears would have "ample opportunity to establish that assertion." Id.
 We acknowledge that a future litigant who claimed that he had not been certified as owing child support arrears and also showed that he was denied the opportunity for review before the State Department might have a colorable due process challenge. However, Weinstein does not allege that he was not the person certified by New York State as being in child support arrears and therefore such a challenge is not before this court and we do not decide it.
 
 
 [11]
 Neither the parties nor this court could find any legislative history relating to Congress's intent when it used different verbs ("may" and "shall") in 42 U.S.C. § 652(k)(2) in referring to the Secretary of State's role in revoking and denying passport applications for those certified to owe more than $5000 in child support. The statute was adopted as Section 370 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193 (1996). The conference report to that Act can be found at H.R. Conf. Rep. 104-275 (July 30, 1996).
 
 
 [12]
 The current version of 22 C.F.R. § 51.70(b)(4) is the same as that reviewed in Haig v. Agee.
 
 
 [13]
 The statute stated, in relevant part, "The Secretary of State may grant and issue passports... under such rules as the President shall designate and prescribe... and no other person shall grant, issue, or verify such passports." Haig, 453 U.S. at 290 (quoting 22 U.S.C. § 211a (1976 ed., Supp. IV)). The current version of the statute is the same in all respects significant to this discussion. See 22 U.S.C. § 211a (2001).
 
 
 [14]
 The Equal Protection Clause of the Fourteenth Amendment, which has been judicially interpreted to apply to the federal government as a part of the Fifth Amendment, commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." As a general rule, however, "`legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (quoting McGowan v. Maryland, 366 U.S. 420, 425-426 (1961)).
 
 
 [15]
 22 C.F.R. § 51.70(a) sets forth the grounds for which a passport cannot be issued. The regulation states:
 (a) A passport, except for direct return to the United States, shall not be issued in any case in which the Secretary of State determines or is informed by competent authority that:
 (1) The applicant is the subject of an outstanding Federal warrant of arrest for a felony, including a warrant issued under the Federal Fugitive Felon Act (18 U.S.C. 1073); or
 (2) The applicant is subject to a criminal court order, condition of probation, or condition of parole, any of which forbids departure from the United States and the violation of which could result in the issuance of a Federal warrant of arrest, including a warrant issued under the Federal Fugitive Felon Act; or
 (3) The applicant is subject to a court order committing him or her to a mental institution; or
 (4) The applicant is the subject of a request for extradition or provisional arrest for extradition which has been presented to the government of a foreign country; or
 (5) The applicant is the subject of a subpoena issued pursuant to section 1783 of Title 28, United States Code, in a matter involving Federal prosecution for, or grand jury investigation of, a felony; or
 (6) The applicant has not repaid a loan received from the United States as prescribed under §§ 1.10 and 71.11 of this chapter; or
 (7) The applicant is in default on a loan received from the United States to effectuate his or her return from a foreign country in the course of travel abroad; or
 (8) The applicant has been certified by the Secretary of Health and Human Services as notified by a State agency under 42 U.S.C. 652(k) to be in arrears of child support in an amount exceeding $5,000.00.
 22 C.F.R. § 51.70(a). In addition, subsection (b) of § 51.70 sets forth additional grounds under which the Secretary of State "may" refuse to issue a passport.
 
 
 [16]
 See 22 C.F.R. § 51.80(a), which provides:
 (a) The provisions of §§ 51.81 through 51.89 [setting forth notice and hearing requirements] do not apply to any action of the Secretary of State taken on an individual basis in denying, restricting, revoking or invalidating a passport or in any other way adversely affecting the ability of a person to receive or use a passport by reason of:
 (1) Noncitizenship,
 (2) Refusal under the provisions of § 51.70(a)(8),
 (3) Refusal to grant a discretionary exception under the emergency or humanitarian relief provisions of § 51.71(c), or
 (4) Refusal to grant a discretionary exception from geographical limitations of general applicability.
 
 
 [17]
 Under the Secretary's regulations, all those whose passport applications are denied or have "otherwise been the subject of an adverse [passport] action" are entitled to written notification of such action which includes "the specific reasons for the adverse action." 22 C.F.R. § 51.75. This notice is provided after the adverse action has been taken. Plaintiff concedes that he received such a notice in this case.
 
 
 [18]
 22 C.F.R.§ 51.71(a) states, in relevant part:
 A passport shall not be issued in any case in which the Secretary of State determines or is informed by competent authority that the applicant is subject to imprisonment or supervised release as the result of a felony conviction for a Federal or state drug offense if the individual used a U.S. passport or otherwise crossed an international border in committing the offense.
 
 
 [19]
 Although plaintiff appears to argue to the contrary, those in his position are not the only class denied the humanitarian or emergency grounds exception. Rather, under the regulations, only those denied passports because of having committed certain drug offenses are eligible for such an exception. See 22 C.F.R. §§ 51.70(a), 51.71. In addition, we note that the Secretary's refusal to grant the humanitarian or emergency grounds exception cannot be challenged in a State Department hearing. See 22 C.F.R. § 51.80(a)(3).