**William BLOOM, Plaintiff,**

**v.**

**FOX NEWS OF LOS ANGELES, its subsidiary Channel Five Fox News of New York, Rosanna Scotto, and John Deutzman, Defendants.**

No. 2:04–cv–05638–ENV–ARL.

United States District Court, E.D. New York.

Sept. 6, 2007.

William Bloom, Bay Shore, NY, pro se.

Slade R. Metcalf, Hogan & Hartson LLP, New York, NY, for Defendants.

### DECISION and ORDER

VITALIANO, District Judge.

In what is essentially an action for false light invasion of privacy and defamation, *pro se* plaintiff William Bloom[1] seeks $20 million in damages as well as a permanent injunction against defendants from pursuing plaintiff. Defendant Fox Television Stations, Inc.[2] (the "corporate defendant" or "Fox") moves for summary judgment.

For the reasons stated below, the Court grants the motion.

### BACKGROUND

Plaintiff filed his complaint on December 23, 2004, invoking this Court's jurisdiction pursuant to 28 U.S.C. § 1332(a). On its face, the complaint did not allege complete diversity among the parties. Plaintiff identified himself as a New York resident and provided a New York address as his address of record and for service and the corporate defendant as a New York corporation. The corporate defendant clarified that it is incorporated in the state of Delaware and that, at time of filing of the complaint and answer, its principal place of business was in California. The corporate defendant has since shifted its principal place of business to New York, but that is of no moment to the Court. For purposes of establishing diversity jurisdiction, the citizenship of the parties at the time of filing of the complaint is controlling. *See Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir., 1959). This Court has jurisdiction over this matter.

The following facts are taken from plaintiff's submissions, exhibits, including videotapes and transcripts thereof, produced in support of this motion, and, to the extent not disputed, from defendant's amended Rule 56.1 Statement.[3]

---

1. At her request, the Court dismissed this action with prejudice as to *pro se* plaintiff Barbara Bloom, pursuant to Federal Rule of Civil Procedure 41(a)(2), on May 22, 2006 and amended the caption accordingly.

2. Corporate defendant Fox Television Stations, Inc. repeatedly asserts that it was "incorrectly sued herein as 'Fox News of Los Angeles, its subsidiary Channel Five Fox News of New York'". *See* Answer at 1; Defendant's Amended Rule 56.1 Statement at 1; Defendant's Memorandum of Law in Support of Its Motion for Summary Judgement at 1. Of relevance is not how the corporate defendant chooses to refer to itself, but that two of the defendants named in the complaint are, in fact, one entity. The record further reveals that plaintiff has submitted no proof of service for Rosanna Scotto and John Deutzman. *See also* Declaration of John Deutzman in Support of Motion for Summary Judgment at ¶ 2 (declaring that he was never served). As such, Deutzman and Scotto are not yet parties in this action. *See* Fed. R. Civ. Proc. 4.

3. Although plaintiff did not submit formal opposition papers, the Court is mindful that he is proceeding *pro se* and that his papers must be read liberally and interpreted as raising

At the outset, it is important to note the backdrop to this matter-an investigation conducted by the New York State Department of Health's Office of Professional Medical Conduct into allegations, *inter alia,* of inappropriate sexual behavior by plaintiff with patients. The New York Board for Professional Conduct (the "State Board") ultimately charged plaintiff with 15 separate counts of misconduct, including 1) practicing medicine with negligence on more than one occasion, 2) practicing medicine with incompetence on more than one occasion, 3) "fraudulence", 4) moral unfitness, 5) harassing, abusing and/or intimidating patients, and 6) failure to maintain records. The charges were resolved after plaintiff accepted a consent agreement that placed limitations on his medical license, including precluding patient contact and any practice of medicine. The consent agreement was then converted into a consent order, which took effect on November 9, 2001. *See Bloom v. American Board of Neurological Surgery, et al.,* No. 03–4174, slip op. at 2–8 (E.D.N.Y. March 27, 2007). Plaintiff brought suit in state court attacking the validity of the consent agreement and order, but the Appellate Division, Third Department held that he was not an aggrieved party as he signed the consent agreement and, irrespective, his contentions were without merit. *See Bloom v. New York State Dep't of Health,* 301 A.D.2d 881, 882, 752 N.Y.S.2d 923, 924 (3d Dep't 2003). Plaintiff's attempts to relitigate the matter in federal court were also unsuccessful. *See Bloom v. American Board of Neurological Surgery, et al.,* No. 03–4174, slip op. at 21–22 (E.D.N.Y. July 28, 2004) (granting in part and denying in part defendants' motion to dismiss), slip op. at 14 (E.D.N.Y.

March 27, 2007) (granting summary judgment). In the interim, plaintiff was the subject of further disciplinary action by the State Board for attempting to re-register with the New York State Department of Education in violation of the order.

In or about late October 2004, Bloom alleges that John Deutzman, as a Fox reporter, came to his home early one morning, hammered on the door, harassed and humiliated him, and recorded the encounter with a hidden camera and microphone. Specifically, Bloom alleges "Dietzman [sic] maliciously embarrassed and humiliated [plaintiff] in a six-minute program a week later stating [plaintiff] rubs his penis against and 'spanks' his patients, a false statement [Deutzman] never bothered to check." Plaintiff also alleges that in the segment, "Scotto, commenting suggested that all 'victims of this doctor' should be paid off by their insurance company, and that 'the phones should be ringing off the hook.' " Plaintiff contends that he was defamed and portrayed "as a senile and incompetent physician, morally corrupt and an obvious danger to the public." Plaintiff claims to have suffered a loss of reputation and standing in the community as a result of these actions.

On November 17, 2004, the corporate defendant aired a news broadcast focusing on medical examinations insurance companies required of patients, including the nonparty patient who was the focus of the report, before covering certain expenses. Plaintiff was identified as a doctor who performed such examinations for Allstate and, indeed, had examined the nonparty patient whose story served as the spring-

---

the strongest arguments they suggest. *See Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir.2001); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Plaintiff does not contest that the videotape and the written transcript provided by defendant accurately represent the broadcast.

board for the report. As detailed below, the proceedings before the State Board were discussed in the broadcast and snippets of Deutzman's interaction with Bloom at his home were also aired. It is by this broadcast that Bloom alleges he was defamed.

## DISCUSSION

### A. *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides for the grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden of demonstrating that no issue as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A motion for summary judgment cannot be defeated by "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . . there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d 202. Accordingly, the nonmoving party (a) "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*,

132 F.3d 145, 149 (2d Cir.1998), (b) "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and (c) "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir.2001) (internal quotation marks omitted).

There are no genuine issues of material fact in this case. The parties agree to what was said, by whom, where, when, and in what forum. What they disagree on is whether the statements actually made were defamatory as a matter of law.

### B. *Defamation/Slander*

 The substantive law of New York applies to the instant action. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Com/Tech Communication Techs., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 150 (2d Cir.1998); *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir.1986). Plaintiff claims that the broadcast containing the spoken words of Mr. Deutzman and Ms. Scotto defamed him and thus complains of slander. *See Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir.2001) (explaining difference between slander and libel under New York law); *Idema v. Wager*, 120 F.Supp.2d 361, 365 (S.D.N.Y.2000) ("Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."), *aff'd* 29 Fed.Appx. 676 (2d Cir. 2002); *Matthews v. Malkus*, 377 F.Supp.2d 350, 357 (S.D.N.Y.2005) ("Slander is the uttering of defamatory words which tend to injure another in his reputation, office, trade, etc.").[4] Although New York's strict

---

4. To the extent plaintiff is complaining of how is was *portrayed,* he is asserting a false light

pleading requirements to state a cause of action for libel or slander under Civil Practice Law and Rules § 3016(a) do not apply in this diversity action, "federal courts do require that the alleged defamatory statements be pleaded with sufficient specificity to put the defendants on notice." *Berwick v. New World Network Intern., Ltd.*, 2007 WL 949767, *11 (S.D.N.Y.2007) (citing *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980)). *See also Pasqualini v. MortgageIT, Inc.*, 498 F.Supp.2d 659, 671–72, 2007 WL 2161781, *9 (S.D.N.Y.2007) (and cases cited therein). In assessing whether a defamation claim has been plead with sufficient particularity, courts look to "whether said complaint references the alleged defamatory statement, identifies who made the statement, when it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party." *Nickerson v. Communication Workers of America Local 1171*, 2005 WL 1331122, *7 (N.D.N.Y.2005). *See also Muzio v. Incorporated Village of Bayville*, 2006 WL 39063, *8 (E.D.N.Y.2006).

At issue in the instant action are the statements made by Mr. Deutzman and Ms. Scotto during a broadcast by the corporate defendant. On the face of his complaint, plaintiff put the corporate defendant on notice that he alleges Mr. Deutzman's statements that he rubbed his genitals against a patient and that he spanked a patient and Ms. Scotto's statements that the "victims" of plaintiff should be paid off by their insurance company and that the phones should be ringing off the hook were defamatory. The Court reads plaintiff's complaint broadly and liberally, and, after reviewing the complained of broadcast by video and written transcription, identifies the following statements as those which meet plaintiffs description in his complaint:

John Deutzman: Meet William or Billy Bloom, He used to be Dr. Bloom and during the prime of his career he was a respected Bay Shore neurosurgeon. He even wrote a book called *After All, It's Only Brain Surgery*. But towards the end of his career two things happened; Dr. Bloom served as a consultant for at least one of the major insurance companies, Allstate.

\* \* \* \* \* \*

Deutzman: And towards the end of his career something went haywire. It was so bad that the state stopped him from practicing medicine.

\* \* \* \* \* \*

Deutzman: [Nonparty patient] says he had a gut feeling that something was strange about his visit to Dr. Bloom. Turns out [the nonparty patient's] instincts were right. [The nonparty patient] didn't know it at the time, but when Dr. Bloom was checking him out, the state was checking out Dr. Bloom and they found enough evidence, some of it very bizarre, to stop him from being a doctor. In fact one year after Dr. Bloom examined [the nonparty patient] the state stopped him from treating patients. Among the charges "negligence" "incompetence", "fraudulent practice". And on at least two occasions, according to the state, Dr. Bloom at the age of 73, engaged in inappropriate contact with female patients. In one case the state says "he pressed his penis against her ... rubbed her outer thighs and held

invasion of privacy claim, which is not cognizable under New York law. *See Pedraglio Loli v. Citibank Inc.*, 173 F.3d 845, 1999 WL 187913, *1 (2d Cir.1999); *Colandrea v. Town of Orangetown*, 490 F.Supp.2d 342, 351 (S.D.N.Y.2007). Any such claim, therefore, is dismissed.

her hand". With another patient "he put his hand down her pants to massage her lower back and slapped her buttocks". The state concluded in both cases "this contact was inappropriate ... And not for legitimate medical purpose". More importantly for [the nonparty patient's] situation the doctor was charged five times with "fail[ing] to perform an adequate physical examination" and "fail[ing] to take adequate medical history." Dr. Bloom pled no contest to all the charges. The last of those botched exams occurring just two months before Dr. Bloom saw [the nonparty patient] and decided he was okay. But [the nonparty patient] was not okay.

\* \* \* \* \* \*

Deutzman: After battling Allstate for three years [the nonparty patient] found out on his own that Dr. Bloom was ruled to be incompetent.

\* \* \* \* \* \*

Rosanna Scotto: Well, I'm sure after they see this report tonight the phone's going to be ringing off the hook.

For ease of analysis, the Court will refer to these as the Deutzman and the Scotto statements.

■ To state a claim for defamation, a plaintiff must allege "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se,* and (vii) not protected by privilege." *Albert,* 239 F.3d at 265–66 (footnotes and internal quotations omitted). Plaintiff does not plead special harm, and there is no such evidence in the record. The Court, therefore, interprets his allegations as slander *per se,* i.e., as "that tend[ing] to injure another in his or her trade, business or profession."

*Liberman v. Gelstein,* 80 N.Y.2d 429, 435, 605 N.E.2d 344, 347, 590 N.Y.S.2d 857, 860 (1992). *See also Albert,* 239 F.3d at 270 (finding that statements made by defendant that physicist plaintiff improperly handled radioactive material and endangered co-workers tended to injure plaintiff in his profession).

■ Defendant does not quibble with plaintiff's pleadings, arguing instead that the statements are substantially true, privileged as a reporting of an official proceeding, and/or unactionable opinion. Truth—even substantial truth—is, of course, the ultimate defense to defamation. *See Meloff v. New York Life Insurance Co.,* 240 F.3d 138, 146 (2d Cir.2001) ("Even 'substantial truth' will preclude a finding of libel."); *Guccione,* 800 F.2d at 301–02 ("If the statement at issue in this case was substantially true, the claim of libel was legally insufficient and the complaint should have been dismissed, regardless of any impact the statement might have had on [plaintiff's] reputation."); *Grennan v. Nassau County,* 2007 WL 952067, *20 (E.D.N.Y.2007) ("Under the law of New York it is 'fundamental that truth is an absolute unqualified defense to a civil defamation action.' ") (quoting *Guccione*); *Jewell v. NYP Holdings, Inc.,* 23 F.Supp.2d 348, 366 (S.D.N.Y.1998) ("Thus, under New York law, it is not necessary to demonstrate complete accuracy to defeat a charge of libel. It is only necessary that the gist or substance of the challenged statements be true.") (internal quotations and citations omitted). To survive summary judgment, plaintiff must able to show that the statements complained of are false. *See Lopez v. Univision Communications, Inc.,* 45 F.Supp.2d 348, 356 (S.D.N.Y.1999). Further, "[w]here, as here, an article concerns a private individual on a matter of public concern, the plaintiff must establish that the defen-

dants acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Cottrell v. Berkshire Hathaway, Inc.,* 26 A.D.3d 786, 809 N.Y.S.2d 714, 715 (4th Dep't 2006) (internal quotations and citations omitted). *See also Konikoff v. Prudential Insurance Company of America,* 234 F.3d 92, 100–06 (2d Cir.2000) (discussing and applying test developed in *Chapadeau v. Utica Observer–Dispatch, Inc.,* 38 N.Y.2d 196, 199, 341 N.E.2d 569, 571, 379 N.Y.S.2d 61, 64 (1975)).

■ New York offers additional protection to those reporting on official proceedings. Section 74 of the New York Civil Rights Law provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceedings or other official proceeding . . . ." Proceedings of the State Board for Professional Medical Conduct have been interpreted as official proceedings for the purposes of § 74. *See Elibol v. Berkshire–Hathaway, Inc.,* 298 A.D.2d 944, 945, 747 N.Y.S.2d 649, 650–51 (4th Dep't 2002).

■ In support of its motion for summary judgment, Fox offers the statement of charges propounded by the State Board, the consent agreement signed by plaintiff, and the consent order, showing that Bloom was the subject of disciplinary action by the state, the charges, and the result of those proceedings. Critically, a review of the broadcast and transcript reveals that Mr. Deutzman recounted the charges brought by the State Board, attributed them to the State Board, and reported the outcome of its proceedings. A comparison of these statements with the documentary evidence leaves not the slightest doubt that the broadcast was a fair and true report of the state disciplinary proceedings. *See, e.g., Mills v. Raycom Media, Inc.,* 34 A.D.3d 1352, 1353, 824 N.Y.S.2d 845, 846 (4th Dep't 2006) (finding evidence offered of allegations of sexual abuse in family court proceeding sufficed to defeat defamation claim even though action settled with no admission of guilt).

■ Finally, statements of pure opinion are not actionable as defamation in New York. *See Qureshi v. St. Barnabas Hospital Center,* 430 F.Supp.2d 279, 288 (S.D.N.Y.2006). To apply the facts to the legal framework and determine whether a statement is opinion, courts look to several factors, including whether the contested language has a precise meaning that is readily understood, whether the statement can be proven true or false, and " 'whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.' " *Id.* (quoting *Gross v. New York Times Co.,* 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813, 817, 623 N.E.2d 1163, 1166(1993)). *See also Levin v. McPhee,* 119 F.3d 189, 197 (2d Cir.1997) ("New York courts look to the immediate context and the broader social context of the statement. . . . When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact.") (citations omitted). The conjecture of Ms. Scotto that the phones will be ringing off the hook most obviously fall within this category. About that there can be no dispute.

It is not necessary for the Court to parse further the statements made by Deutzman and Scotto. Without exception, they are either substantially true, a "fair and true" report of a quasi-judicial pro-

ceeding, unactionable opinion, or some combination of all three. Based on a record where the operative facts are uncontested, the application of controlling law requires summary judgment in favor of Fox. Indeed, because Bloom cannot meet the threshold showing that he was defamed, the Court need not even reach the questions of whether Fox acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties or defendant's affirmative defenses premised on the First Amendment.

## CONCLUSION

For the foregoing reasons, Fox's motion for summary judgment is granted, and plaintiff's requests for relief, including permanent injunctive relief, are denied. The corporate defendant is directed to serve plaintiff with a copy of this Decision and Order and to file the affidavit of service with the Court. The Clerk of the Court is directed to close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Decision and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 920–21, 8 L.Ed.2d 21 (1962).

SO ORDERED.