Karin SAVINO, 220 Gleeland Street, Deer Park, Long Island, New York, 11729, James August Savino and Karen Savino, minors by their mother and natural guardian, Karin Savino, Plaintiffs,

v.

The COUNTY OF SUFFOLK, a municipal entity, Suffolk County Police Officer Albert Murray, Shield # 3440, John Does, Suffolk County Police Officers, names and Shield # 's unknown, Sergeant James Caiaccia, Suffolk County Police Officer, Defendants.

No. CV 90–1905.

United States District Court,
E.D. New York.

Oct. 17, 1991.

James I. Meyerson, New York City, for plaintiffs.

E. Thomas Boyle, Suffolk County Atty. by Robert H. Cabble, Hauppauge, N.Y., for defendants.

WEXLER, District Judge.

In the above-referenced action, plaintiffs sue defendants for violations of their constitutional and civil rights based on a claim of excessive force allegedly committed in the course of arresting plaintiff Karin Savino. Named as defendants are Suffolk County and certain individual police officers of the Suffolk County Police Department. The present motion stems from a claim by plaintiffs that they are being denied equal protection of the law by virtue of this Court's jury selection plan, adopted pursuant to 28 U.S.C. § 1861 *et seq.* By this motion, plaintiffs seek to set aside the jury pool to be convened in this case, or alternatively, to have this Court reassign the matter to the Brooklyn courthouse.

More specifically, plaintiffs allege that the jury selection plan of the Eastern District of New York violates their equal protection rights by treating similarly situated litigants differently. The disparity in treatment, as urged by plaintiffs, is caused by the fact that litigants whose cases are assigned to the Hauppauge Courthouse have their cases tried by juries drawn only from Nassau and Suffolk Counties, whereas cases tried in Brooklyn draw jurors from

all counties within the Eastern District. It is to be noted that all acts alleged in the complaint are asserted to have occurred within Suffolk County. In addition, plaintiff resides in Suffolk, and the named individual defendants serve as Suffolk County police officers. For the reasons stated below, the Court finds plaintiffs' motion to be without merit.

## I. *Authority to Overturn the Plan*

■ The Court first notes plaintiffs' apparent failure to recognize the Second Circuit's approval of the Eastern District's jury selection plan. The Second Circuit Judicial Council approved the plan pursuant to an order filed with the Clerk of the Court for the Eastern District on June 23, 1977. That plan specifically provides that:

The Long Island Division's master jury wheel shall include the names of all persons randomly selected from the voter registration lists of only Nassau and Suffolk counties.

*See* Jury Selection Plan for the Eastern District at § 5. 28 U.S.C. § 1863 provides that "[e]ach United States district court shall devise and place into operation a written plan ..." for random selection of jurors. Therefore, although the original burden was on the district court to establish a plan, the Second Circuit's approval effectively removed authority of this Court to amend or alter the plan in any way.

## II. *Equal Protection Analysis*

■ Even assuming, *arguendo*, that this Court possesses authority to amend the Eastern District's jury plan, which as noted above it does not, plaintiffs in any event fail to demonstrate a violation of the Equal Protection Clause. For purposes of equal protection analysis, courts apply a strict scrutiny standard of review to the law at issue whenever a statute contains a suspect classification or limits a fundamental right. *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944).

■ Suspect classes have traditionally included such categories as race, alienage, and ancestry. *See e.g.*, *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Oyama v. California*, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948). Fundamental rights have been defined as those rights "explicitly or implicitly guaranteed by the Constitution," *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973) (citations omitted), and include, *inter alia*, privacy, marriage, the right to vote, freedom to travel, and freedom of association. *See e.g.*, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Under a strict scrutiny standard, the statute in question passes muster only if the classification or restriction of a fundamental right is necessary to promote a compelling or overriding governmental interest.

■ Over time, it has been argued that a second tier analysis, or intermediate standard, has developed by which courts uphold a challenged statutory classification if it is substantially related to achievement of important governmental objectives. *See e.g.*, *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The lowest level scrutiny by which classifications are tested is the rational basis standard, by which equal protection is "offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective[;] ... [a] statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 425–6, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (citations omitted).

■ Plaintiffs claim that "it is very clear" that the Second Circuit recognizes the intermediate standard of review and urges its application to this case. However, defendants persuasively argue that

plaintiffs' reliance on the cases cited is misplaced as to the facts presented herein. *See Eisenbud v. Suffolk County,* 841 F.2d 42, 45 (2d Cir.1988); *Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). In addition, it must be emphasized that as to the case at bar, plaintiffs *concede* the absence of both a fundamental right and a suspect classification based on race or any other recognized group. *See* Plaintiffs' Reply Memo. at 11–12. Therefore, the appropriate standard for any possible equal protection analysis of the Eastern District's jury plan must focus on whether the classification is rationally related to the objective sought by the government.

■ As noted above, the Eastern District jury selection plan provides that the Hauppauge jury pool include Nassau and Suffolk only, whereas the Brooklyn court's pool includes residents of Brooklyn, Queens, and Richmond Counties as well. The specific courthouse which tries a given case is a matter of random selection, unless the case is deemed a Long Island case, in which instance it is tried at the Long Island division in either Uniondale or Hauppauge. Thus, based on the random selection of a courthouse, the alleged "classification" does not classify parties at all, but merely assigns them to a specific courthouse. Plaintiffs contend, notwithstanding the absence of a direct suspect racial classification, that there are racial implications resulting from the jury plan. However, the plan successfully accomplishes the following legitimate goals: random jury selection; a fair and representative pool of jurors; and maximum efficiency of the Eastern District's legal process. Clearly, the plan is rationally related to these legitimate goals.

Furthermore, it is to be noted that "[c]ourts have broad latitude in defining the geographic area from which juries will be selected. There is no constitutional right to have a jury drawn from an entire district." *United States v. Yonkers Contracting Co., Inc.,* 682 F.Supp. 757, 768 (S.D.N.Y.1988) (citations omitted). In addition, juries may be selected "exclusively from certain geographic areas, such as the division or counties located nearest the courthouse." *Id.* (citing *Zicarelli v. Dietz,* 633 F.2d 312, 315–320 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981)). Likewise, a court is not required to "concentrate its jury selection within the particular division, county or city where the trial will take place or where the defendant resides." *Id.* (citation omitted).

Given the broad discretion permitted courts in developing jury plans, the absence of any allegation of a specific impact due to the lack of Brooklyn, Queens and Richmond residents on plaintiffs' jury is particularly telling. Plaintiffs fail to note how a Suffolk and Nassau jury is underrepresentative of the district as a whole, and also fail to explain what characteristics attributable to non-Long Island residents are denied litigants at the Hauppauge courthouse so as to create an equal protection violation.[1] The mere allegation that different litigants are treated differently does nothing to convince the Court that the jury plan's organization does not rationally meet the objectives involved. *See Arlington Heights v. Metropolitan Hous. Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 562–63, 50 L.Ed.2d 450 (1977). In sum, if the Court were to decide plaintiffs' constitutional claim on its merits, it would find that the Eastern District's jury selection plan is not violative of the Equal Protection Clause.

CONCLUSION

For the reasons stated above, plaintiffs' motion to set aside the jury pool or transfer this case to the Brooklyn courthouse is denied.

SO ORDERED.

---

1. Indeed, it appears that the inclusion of Suffolk and Nassau residents in the Brooklyn jury pool was simply intended to create at least one court which would be representative of all counties within the district.