Henry DITTMER, et al., Plaintiffs,

v.

**COUNTY OF SUFFOLK, et al., Defendants.**

No. 96–CV–2206(TCP)(ARL).

United States District Court, E.D. New York.

Feb. 21, 2002.

Madeline Shelia Galvin, Galvin & Morgan, James E. Morgan, Delmar, NY, for Plaintiffs.

John J. Sipos, State of New York Office of the Attorney General, Assistant Attorney General New York State Department of Law, Albany, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants County of Suffolk, *et al.* ("Suffolk") move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment of Plaintiffs' Henry Dittmer's, *et al.*'s ("Dittmer") facial Equal Protection challenge. Dittmer cross-moves for summary judgment of that claim. Both parties have filed statements of material fact for which they feel there is no genuine issue for trial pursuant to Local Civil Rule 56.1 ("56.1 Statements").

For the following reasons, Suffolk's Motion for Summary Judgment is GRANTED, and Dittmer's Cross Motion for Summary Judgment is DENIED.

## BACKGROUND

### A. Factual History

This case was brought by a property owner on his own behalf and on behalf of approximately 167 other similarly situated property owners to redress alleged constitutional violations stemming from the enactment of the New York Pine Barrens Protection Act ("Act") on July 13, 1993, codified in Article 57 of the New York Environmental Conservation Law. (Second Am. Compl. ¶ 2.)

Dittmer owns land within the Pine Barrens. *Dittmer v. County of Suffolk,* No. 96–CV–2206, slip op. at 1 (E.D.N.Y. July 7, 1999). Defendants are three towns in eastern Long Island (Brookhaven, Riverhead, and Southampton), Suffolk County, a corporate entity formed by the State to implement the Act ("Commission") and its members: the Suffolk County Executive ("Gaffney"), the Governor's Representative to the Commission ("Cowen"), and the Town Supervisors for Brookhaven, Southampton, and Riverhead ("Grucci," "Connuscio," and "Stark" respectively). *Id.* at 1–2.

The Act was passed "to allow the state and local governments to protect, preserve and properly manage the unique natural

resources of the Pine Barrens Peconic Bay system." N.Y. ENVTL. CONSERV. LAW § 57–0105 (Consol.2001). The Act's stated goals are: (1) to protect the largest natural drinking water source in New York ("Source Aquifer"); (2) to preserve the Pine Barrens' unique and partially endangered ecosystem; (3) to protect "unique natural, agricultural, historical, cultural and recreational resources;" (4) to promote environmentally sound development; (5) to plan and facilitate limited controlled fires necessary to protect the Pine Barrens; (6) to limit urban sprawl; and (7) to safeguard and protect surface waters in the Pine Barrens. *Id.* §§ 57–0105, 57–0121. The Act's primary goals are protecting the Source Aquifer and the Pine Barrens' unique ecosystem. *See id.* § 57–0105; *Dittmer v. County of Suffolk*, 146 F.3d 113, 114 n. 1 (2d Cir.1998).

The Act divides the Pine Barrens into a "Core Preservation Area" and a "Compatible Growth Area," each consisting of roughly 50,000 acres. *Dittmer*, No. 96–CV–2206, slip op. at 2. New York State formed the Commission to implement the Act, and the Commission prepared a Comprehensive Land Use Plan ("Plan") in furtherance of that purpose. *Id.*

The Act contemplates that the Plan will protect the Core Preservation Area by prohibiting or redirecting new development. N.Y. ENVTL. CONSERV. LAW § 57–0121(3)(c). The Plan prohibits and redirects new development primarily by transferring development rights. *Dittmer*, No. 96–CV–2206, slip op. at 3.

The Commission transfers development rights by granting landowners within the Core Preservation Area Pine Barrens Credits ("PBC") for those rights which the Act, in prohibiting development, allegedly renders valueless. *Id.* at 3–4. The Commission grants PBCs through the Pine Barrens Credit Clearinghouse ("Clearinghouse"). *Id.*

PBC recipients may either: (1) use them to increase development density on other property they own outside of the Core Preservation Area (but within specifically designated receiving areas within the Compatible Growth Area); or (2) may sell them to owners of such receiving parcels. *Id.* at 4. The Clearinghouse acts as the purchaser of last resort for persons who may not otherwise sell their PBCs. *Id.* It buys them at 80% of their minimum value as established by the Commission. *Id.*

Persons who own land in the Core Preservation Area may develop their property if they obtain permits from the Commission upon a showing of extraordinary hardship. N.Y. ENVTL. CONSERV. LAW § 57–0123(3) (incorporating section 57 0121(10)'s permit procedure). As of November 27, 2000, the Commission granted thirty-five development permits and denied twelve.[1] *Dittmer*, No. 96–CV–2206, slip op. at 4. Additionally, property in the Core Preservation Area may be developed: (1) if developed for agricultural or horticultural uses; (2) if developed under a residential development plan that complies with current zoning regulations and that received preliminary or final development approval on or before June 1, 1993; or (3) if used to construct single family homes on road-side parcels identified by the Commission. N.Y. ENVTL. CONSERV. LAW § 57–0107(13). This list of developmental possibilities is not exhaustive. *See id.*

Dittmer alleges that the Act and Plan deprive him of "protectible property rights and interests without due process of law

1. That figure had not changed as of the time this motion was filed. (Mem. in Supp. Defs.' Mot. for Sum. J. at 6.)

[and] the equal protection of law." (Second Am. Compl. ¶ 17.) He initially sought "to have the Act declared unconstitutional on its face as violating the equal protection and substantive due process provisions of the United States Constitution and to have defendants enjoined from enforcing the Act." (Second Am. Compl. ¶ 2.) However, Dittmer has abandoned his takings claim and this Court dismissed his substantive Due Process claim. *See Dittmer*, No. 96–CV–2206, slip op. at 7, 12–15. Accordingly, Dittmer's only remaining claim is his facial Equal Protection challenge.

This Equal Protection claim alleges that Dittmer's property was treated differently than similarly situated, federally owned property.[2] (Second Am. Compl. ¶¶ 14 15.) Dittmer contends that Riverhead officials negotiated the designation of federally owned property in Calverton ("Calverton Property") with the parties responsible for mapping the protected areas.[3] (Second Am. Compl. ¶ 15.) Town officials purportedly conditioned their approval of the Pine Barrens conservation effort on exempting the federally owned property from the Core Preservation Area, resulting in the exclusion of parts of the Calverton Property from the Core Preservation Area. (Second Am. Compl. ¶ 15.)

The Calverton property includes 10,000 and 7,000 foot jet runways, ammunition bunkers, radar facilities, airplane taxi ways, jet hangers, fuel storage depots, an air traffic control tower, airplane maintenance facilities, a railroad spur, a sewage treatment plant, personnel buildings, cleared fields, safety areas and landing approaches and take-off corridors. (Mem. in Supp. Defs.' Mot. for Sum. J. at 9.) The Calverton property also contains the Calverton National Cemetery, which was used as a burial grounds for armed service members. (Mem. in Supp. Defs.' Mot. for Sum. J. at 9.)

The Act places the following areas into the Core Preservation Area:

thence westward along the southerly boundary of River Road (Grumman Boulevard or Swan Pond Road) to the southeast corner of that parcel containing Conoe (or Canoe) Lake and identified as District 600, Section 137, Block 1, Lot 1; thence northward, westward, and southward along the borders of that parcel containing Conoe (or Canoe) Lake to River Road (Grumman Boulevard); thence westward along the northerly boundary of Grumman Boulevard to the southeasternmost corner of the undeveloped portion (as of June 1, 1993) of the United States Navy/Grumman Corporation property located on the north side of Grumman Boulevard and adjacent to the Grumman entrance known as the South Gate; thence due north along the easternmost edge of that undeveloped portion (as of June 1, 1993) of the United States Navy/Grumman Corporation property to NYS Route 25 . . .

N.Y. ENVTL. CONSERV. LAW § 57–0107(11).

After the Act was passed, part of the aforementioned federal land was given to the Town of Riverhead and the New York State Department of Environmental Conservation. (Mem. in Supp. Defs.' Mot. for Sum. J. at 9 n. 2.)

## B. Procedural History

On July 7, 1999, this Court partially granted Suffolk's Motion to Dismiss. *Dittmer v. County of Suffolk*, No. 96–CV–2206, slip op. at 1 (E.D.N.Y. July 7, 1999). The

---

**2.** Dittmer also avers that the manner of issuing and allocating PBCs violates his Equal Protection rights. (Second Am. Compl. ¶ 20.)

**3.** The federally owned property had been used by the Grumman Corporation for jet testing.

Court determined that Dittmer abandoned his takings claim and dismissed Dittmer's facial Due Process challenge. *See id.*

On March 23, 2001, Suffolk moved for summary judgment. *Dittmer v. County of Suffolk,* No. 96–CV–2206, slip op. at 1 (E.D.N.Y. April 2, 2001). The Court denied that motion without prejudice to renew on grounds that it was premature. *Id.* at 1–2. The Court also referred the matter to United States Magistrate Judge Arlene R. Lindsay to supervise completion of discovery. *Id.* at 2.

On May 30, 2001, Magistrate Judge Lindsay issued an Order quashing three Subpoenas Duces Tecum issued by Dittmer to New York State Assemblyman Thomas DiNapoli, New York State Senator Kenneth LaValle and legislative staff member Michael Deering on grounds that the subpoenas were overly broad and irrelevant to anything necessary to prove Dittmer's sole remaining Equal Protection claim. *See Dittmer v. County of Suffolk,* No. 96–CV–2206, slip op. at 1 (E.D.N.Y. July 11, 2001). On July 11, 2001, following a hearing on the relevancy of the information sought in the Subpoenas, Magistrate Judge Lindsay again determined that the information sought was irrelevant to a facial Equal Protection claim. *See id.*

These motions followed. The Court heard oral argument on these motions on January 4, 2002 and reserved decision.

## DISCUSSION

### A. Summary Judgment Standard

#### 1. Generally

Courts may grant summary judgment when the moving party demonstrates: (1) that there is no genuine issue of material fact for trial; and (2) that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Nat'l Union Fire Ins. Co. v. Stroh Cos.,* 265 F.3d 97, 103 (2d Cir.2001). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. *See Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir.2000).

Facts are material if they " 'might affect the outcome of the suit under the governing law.' " *Nat'l Union Fire Ins. Co.,* 265 F.3d at 103 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Factual issues are genuine if " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting same); *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2000).

To survive a motion for summary judgment, the nonmoving party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The nonmoving party must "make a showing sufficient to establish the existence of ... [the] element[s] on which ... [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

#### 2. Local Civil Rule 56.1

In the Southern and Eastern Districts of New York, parties moving for summary judgment must submit 56.1 Statements. Local Civ. R. 56.1(a). Nonmoving parties must respond with separate statements of material fact for which they contend there is a genuine issue for trial. *Id.* 56.1(b). Any facts posited by the moving party that are not controverted by the nonmoving party are deemed admitted. *Id.* 56.1(c). Both parties must cite to admissible evidence following each statement of fact for

that statement itself to be admissible. *Id.* 56.1(d).

■ The Second Circuit permits District Courts to grant summary judgment to moving parties on the basis of their uncontroverted 56.1 Statements. *See Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998) (reversing District Court's denial of summary judgment and accepting defendant's uncontested assertions). While District Courts are " 'not required to consider what the parties fail to point out' in their ... 56.1[S]tatements," they may discretionarily choose to search the record of their own accord. *See Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir.2000) (citations omitted)). However, there is no obligation to do so. *See id.*

While the parties' 56.1 Statements do differ substantially, they do not differ on any material facts that raise genuine issues for trial. Significantly, both parties agree that the Act was passed to protect the Pine Barrens' ecosystem and the Source Aquifer. (Pls.' 56.1 Stmnt. ¶ 4; Defs.' 56.1 Stmnt. ¶ 4.) In light of what Dittmer must prove at trial to sustain a facial Equal Protection claim, other contested facts are irrelevant and therefore not material.

Moreover, Dittmer's statements concerning political corruption are of questionable admissibility. *See* LOCAL CIV. R. 56.1(d). In paragraph nine of his 56.1 Statement, Dittmer attempts to incorporate 218 paragraphs from an affidavit sworn by his attorney. That affidavit consists largely of speculation and is not based on personal knowledge. The affidavit itself is therefore suspect, and citation to it is equally dubious. In any case, paragraph nine of Dittmer's 56.1 Statement does not contain facts necessary to

decide this motion. Accordingly, the Court will only consider those facts necessary to determine whether the Act facially violates the Equal Protection clause of the Fourteenth Amendment. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001).

## B. Equal Protection

■ Section 1 of the Fourteenth Amendment to the United States Constitution forbids States from denying persons within their jurisdictions equal protection of the laws. U.S. CONST. amend. XIV, § 1. Laws and statutes that treat persons differently are subject to rational basis scrutiny unless plaintiffs claim: (1) violation of a fundamental right; or (2) disparate treatment based on a suspect or quasi-suspect classification. *See Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir.2001); *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir.2001).

■ Fundamental rights include the right to: (1) privacy; (2) marry; (3) vote; (4) travel; and (5) freely associate. *Savino v. County of Suffolk*, 774 F.Supp. 756, 758 (E.D.N.Y.1991). Suspect and quasi-suspect classifications are ones based on race, gender, alienage or national origin. *Myers v. County of Orange*, 157 F.3d 66, 74 (2d Cir.1998).

■ Statutes survive rational basis scrutiny if they create classifications that " 'rationally further[ ] ... legitimate state interest[s].' " *Weinstein*, 261 F.3d at 140 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)). Rational basis review is highly deferential, " 'does not pass judgment upon the wisdom, fairness, or logic of legislative decisions' " and mandates upholding statutes if " 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Id.* (quoting *Gen.*

*Media Comm., Inc. v. Cohen*, 131 F.3d 273, 285 (2d Cir.1997)).

Moreover, rational basis review presumes a statute's validity and imposes on the party attacking the statute the burden of negating " 'every conceivable basis which might support it' " on rational basis review. *Tarbe v. Berkel, Inc.*, 196 F.3d 136, 137 (2d Cir.1999) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (internal quotations and citations omitted)); *Able v. United States*, 155 F.3d 628, 632 (2d Cir.1998). Accordingly, statutes subject to rational basis review survive if there is any " 'plausible' " justification for the distinctions they draw. *See Weinstein*, 261 F.3d at 140.

**C. Summary Judgment for Suffolk Against Dittmer is Appropriate**

Dittmer has failed to raise genuine issues of material fact that concern the rational basis for the Act. *See Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d at 103. Accordingly, summary judgment for Suffolk is appropriate.

**1. Rational Basis Review is Proper**

Dittmer has not alleged that the Act: (1) violates a fundamental right; or (2) discriminates based on a suspect or quasi-suspect classification. *See Myers*, 157 F.3d at 74; *Savino*, 774 F.Supp. at 758. The Act is therefore subject to rational basis review. *See Weinstein*, 261 F.3d at 140; *Jackson*, 256 F.3d at 96. Accordingly, to survive Suffolk's Motion for Summary Judgment, Dittmer must show that the Act does not rationally further any legitimate New York State interest and that there is no conceivable set of facts that support the distinctions the Act draws. *See Weinstein*, 261 F.3d at 140; *Tarbe*, 196 F.3d at 137; *Able*, 155 F.3d at 632.

**2. The Act Survives Rational Basis Review**

There is a rational basis for the Act. Protecting the Source Aquifer and the Pine Barrens' unique ecosystem are legitimate New York State interests and the land conservation plan implemented by the New York State Legislature rationally furthers those goals. *See Weinstein*, 261 F.3d at 140. The Court presumes the Act's validity and is not in a position to pass " 'judgment upon the wisdom, fairness, or logic' " of the manner chosen by the New York State Legislature to effect those goals. *See id.* (quoting *Gen. Media Comm., Inc.*, 131 F.3d at 285). Accordingly, Dittmer has not carried his burden of defeating the rational basis for the Act. *See Weinstein*, 261 F.3d at 140; *Tarbe*, 196 F.3d at 137; *Able*, 155 F.3d at 632.

**3. Vagueness and Overbreadth**

Dittmer attempts to carry his burden by erroneously arguing that the Act is unconstitutionally broad and vague. Dittmer's misguided application of a First Amendment invalidity standard fails because Dittmer has not alleged that the Act impermissibly restricts anyone's freedom of expression.

Moreover, vagueness and overbreadth claims do not address how the Act fails to protect the Source Aquifer or the Pine Barrens' unique ecosystem, and thereby fails to negate " 'every conceivable basis which might support [the Act].' " *Tarbe*, 196 F.3d at 137; *see Weinstein*, 261 F.3d at 140; *Able*, 155 F.3d at 632. Accordingly, Dittmer has not presented facts necessary to prove an element on which he bears the burden at trial, and summary judgment for Suffolk is appropriate. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

### 4. Regulatory Taking

Dittmer's facial regulatory taking argument is similarly deficient. That inapposite argument fails to negate the two primary goals that support the Act (protecting the Source Aquifer and the Pine Barrens' unique ecosystem) and consequently fails to defeat the rational basis for the Act. *See Weinstein,* 261 F.3d at 140; *Tarbe,* 196 F.3d at 137; *Able,* 155 F.3d at 632. Accordingly, Dittmer has not presented facts necessary to prove an element on which he bears the burden at trial and summary judgment for Suffolk is proper. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

### 5. Fraud in the Inception

 Dittmer's fraud in the inception argument does not carry his burden either. While allegations of political impropriety and inappropriate power-brokering are intriguing, they do not invalidate the Act's goals of protecting the Source Aquifer and the Pine Barrens' unique ecosystem and therefore do not refute the rational basis for the Act. *See Weinstein,* 261 F.3d at 140; *Tarbe,* 196 F.3d at 137; *Able,* 155 F.3d at 632. Those accusations are better addressed to a political forum.

### 6. Consequences of Dittmer's Failure to Carry His Burden

Even if the facts and inferences are construed in the light most favorable to Dittmer, his vagueness, overbreadth, regulatory taking and political corruption arguments are neither material nor genuine because: (1) they do not affect the outcome of the case under governing Equal Protection law; and (2) no reasonable jury could return a verdict in Dittmer's favor on his Equal Protection claim on those grounds. *See Nat'l Union Fire Ins. Co.,* 265 F.3d at 103.

Accordingly, Dittmer has failed to prove that the Act lacks a rational basis, which is his burden at trial. Summary judgment for Suffolk County is therefore appropriate, and summary judgment for Dittmer on his cross-motion is conversely improper. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

### CONCLUSION

Suffolk's Motion for Summary Judgment is GRANTED. Summary Judgment for Dittmer is DENIED. The Clerk of the Court shall enter final judgment for Suffolk.

SO ORDERED.