**Maureen K. BUELL and Gregory P. Forte, Plaintiffs,**

v.

**Abigail L. HUGHES, Nancy Pugliese and Julie Gottlieb, Defendants.**

**No. 3:07CV0468 (DJS).**

United States District Court, D. Connecticut.

July 31, 2008.

John R. Williams, Katrena K. Engstrom, John R. Williams And Associates, LLP, New Haven, CT, for Plaintiffs.

Margaret Q. Chapple, Maria A. Santos, Attorney General's Office, Hartford, CT, for Defendants.

*MEMORANDUM OF DECISION*

DOMINIC J. SQUATRITO, District Judge.

This is a motion for summary judgment involving alleged equal protection and due process violations of the Fourteenth Amendment. Plaintiffs, Maureen Buell ("Buell") and Gregory Forte ("Forte") bring two counts against Defendants, Abigail Hughes ("Hughes"), Nancy Pugliese ("Pugliese") and Julie Gottlieb ("Gottlieb"), pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of their Fourteenth Amendment rights to equal protection and due process through differential treatment and threats to Plaintiffs' property interests in their jobs. Plaintiffs sued Defendants in their individual and official capacities for injunctive relief and attorney's fees, and in their individual capacities for compensatory and punitive damages. Now pending before the Court is Defendants' motion for summary judgment (dkt.# 42). **For the hereafter stated reasons, Defendants' motion for summary judgment (dkt.# 42) is GRANTED on all counts.**

## I. Local Rule 56(a) Statement

■ Plaintiffs have failed to comply with Rule 56(a) of the Local Rules of Civil Procedure for the District of Connecticut ("D.Conn.L.Civ. R."). Local Rule 56(a) requires that the moving party "annex[ ] to a motion for summary judgment a document ... which sets forth in separately numbered paragraphs ... a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Following this, the non-moving party is required to file an answering document, "which states in separately numbered paragraphs ... corresponding to the paragraphs contained in the moving party's Local Rule 56(a)(1) Statement whether each of the facts asserted by the moving party is admitted or denied. The Local Rule 56(a)(2) Statement must also include in a separate section entitled 'Disputed Issues of Material Fact' a list of each issue of material fact as to which it is contended there is a genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(2).

■ In a Local Rule 56(a)(1) Statement, it is assumed that "[a]ll material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement [of] ... the opposing party." D. Conn. L. Civ. R. 56(a)(1). In denying the facts set forth by the moving party, the non-moving party must include in their Local Rule 56(a)(2) Statement "a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3). "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." *SEC v. Global Telecom Servs. L.L.C.*, 325 F.Supp.2d 94, 109 (D.Conn. 2004).

Many of Plaintiffs' responses to Defendants' Local Rule 56(a)(1) Statement fail to meet the requirements of the rule. Paragraphs 52–55, 59, 61, 62, 75, 76, 86, 88, 102, 104, 110 and 124 of Plaintiffs' Local Rule 56(a)(2) Statement all contain the same phrasing, "Plaintiffs lack sufficient information to agree or disagree." (Dkt.# 46, ¶ 52). This response does not comply with Local Rule 56(a)(2), as it neither agrees with nor denies the statements made by the moving party in their Local Rule 56(a)(1) Statement. D. Conn. L. Civ. R. 56(a)(2). Also, these paragraphs fail to cite any affidavits or evidence, as required in Local Rule 56(a)(3). As a result of these violations of Local Rule 56(a), the Court considers ¶¶ 52–55, 59, 61, 62, 75, 76, 86, 88, 102, 104, 110 and 124 to be admitted.

In response to ¶ 60 of Defendants' Local Rule 56(a)(1) Statement, Plaintiffs objected to the phrasing of the statement, and stated so in their response rather than stating whether they agreed or disagreed with the statement put forth. Similarly, in response to ¶ 98, Plaintiffs objected to the formatting and the inclusion of the statement, rather than answering the fact as required by Local Rule 56(a)(2). *See* (Dkt.# 42, Ex. # 1). As a result, ¶¶ 60 and 98 are also considered admitted.

In light of the foregoing statements, the following are the undisputed material facts of the action presently before the Court.

## II. Facts

Plaintiffs are mathematics teachers in the Connecticut Technical High School System (CTHSS). Buell was hired by CTHSS as a part-time typing teacher in September 1979. She was hired full time on September 1, 1981, to work at Kaynor Technical High School ("Kaynor") in Waterbury, CT. She obtained tenure on September 1, 1984. During her employment with CTHSS, Buell taught math in addition to typing. Forte was initially employed by CTHSS as a substitute and part-time trade math teacher at various Connecticut Technical High Schools, starting on November 13, 1998. On October 29, 1999, Forte was hired full time by CTHSS to work at Wilcox Technical High School ("Wilcox"). Forte obtained tenure on October 29, 2003. Both Plaintiffs possessed a 091 teaching certification when they were hired, which certified them to teach trade-related math, trade-related science and/or blueprint reading. Forte also possesses certifications as an Intermediate Administrator and Supervisor (092) and a Vocational Technical School Administrator (082), as well as a coaching permit, effective through 2010. Connecticut regulations require that a teacher possess a 029 certification (core mathematics) in order to teach standard classroom math. However, prior to the January 2002 enactment of the No Child Left Behind Act (NCLB), the CTHSS permitted instructors who possessed a 091 endorsement to teach math and science as core academic subjects. Plaintiffs were assigned to teach classroom math under this allowance.

Once NCLB came into effect in January of 2002, the State Department of Education (SDE) determined that instructors were required to hold a 029 certificate in order to teach math, science or art as a core academic subject at any of the seventeen Connecticut Technical High Schools. The core certifications all require that the applicant:

... present evidence of meeting the following requirements in addition to meeting the assessment requirements ...:

(a) Holds a bachelor's degree from an approved institution;

(b) Has a ... survey course in United States history comprised of not fewer than three semester hours of credit ...;

(c) Has completed a subject-area major consisting of one of the following:

(1) A major awarded by an approved institution in the subject area for which the certification is sought ...; or

(2) A minimum of 30 semester hours of credit in the subject for which endorsement is sought and a minimum of nine semester credits in a related subject or subjects related to the subject for which the endorsement is sought ...;

(d) Has a minimum of 18 credit hours in professional education in a planned program of study and experience ...

*The Regulations of the Connecticut State Board of Education* § 10–145d–451(a–d). The assessment requirements referred to in the above regulation are defined as, "Praxis I–CBT, [and] Praxis II, CON-

NECT OR BEST." *Id.* at § 10–145d–400(i).

As of July 1, 2003, a total of seventy-four teachers held the 091 endorsement and were teaching math, science or art; within this group, sixty-three of the instructors possessed a bachelor's degree and eleven did not. The SDE arranged for these seventy-four teachers to be given the time to pursue their core academic certification. The SDE decided to waive the requirement that existing teachers take the Praxis I exam, as all seventy-four instructors had teaching experience that they considered to be the equivalent of the examination. However, they were required to meet all other standards to obtain their certification.

When reviewing the CTHSS faculty to ensure that they met the NCLB's "highly qualified" standard for educators, the SDE separated those who failed to meet all certification requirements into three categories: (1) instructors possessing a full core academic certification who obtained their endorsement prior to the implementation of either the CONNTENT or Praxis II exams; (2) instructors possessing a 091 certification and a bachelor's degree; (3) instructors possessing a 091 certification who had not obtained a bachelor's degree. The teachers in category one were permitted to waive the Praxis II requirements to obtain the "highly qualified" status, as they already held the 029 certification, and were permitted to demonstrate their competency through holding a major or master's degree in their core subject area or by passing the district's High Objective Uniform State Standard of Evaluation (HOUSSE). However, teachers in categories two and three were required to complete the requirements for a 029 certification, including the Praxis II exam. Those teachers already in possession of a bachelor's degree and at least 12 credits in their core subject area were issued durational shortage area permits ("DSAP"), which al-lowed teachers meeting some but not all of the requirements for certification to teach in their core area while pursuing the completion of the requirements. A DSAP can be reissued no more than two times, resulting in a maximum of three years. The instructors from category three, as well as those from category two who did not meet the requirements to be issued a DSAP, were placed in positions for which they held the appropriate certification for the 2003–2004 school year. These teachers were sent an email by Superintendent Dominic Spera, who was later replaced in that capacity by Hughes, on February 28, 2003, explaining the requirements of the certification and how this would be impacting them. The school system agreed to pay for up to three classes or nine credits per year for teachers pursuing further education.

Defendants in this case are administrators either for the State Department of Education or through them, for the CTHSS. Prior to February of 2004, Hughes was employed as the Associate Commissioner of the Division of Evaluation and Research of the SDE. Since then she has been employed as the Superintendent of the CTHSS, reporting directly to the SDE Commissioner Mark McQuillan ("McQuillan"). Effective June 2, 2003, Pugliese was assigned as acting Bureau Chief for the Bureau of Educator Preparation, Certification, Support and Assessment. This position was made official in January of 2004 and the name was changed to the Bureau of Educator Standards and Certification. In this position, she oversees the assessment and certification of teachers but has no authority or discretion to waive any requirements, which are governed by statute and regulation. Gottlieb was employed as an Education Consultant for the Bureau of Educator Preparation, Certification, Support and Assessment from December 1986

through December 2004. She has been employed as the Certification Consultant for the CTHSS since December, 2004. Her responsibilities include monitoring the certification status of CTHSS teachers and reporting her findings to Superintendent Hughes.

Following her notification of the new requirements, Buell proceeded to work on a degree at Charter Oak State College ("COSC") in general studies, which she was told would leave her short on some of the math credits she would need to earn her 029 certification. She was in communication with Gottlieb, who told her again on August 18, 2003, "The most pressing issue is for you to get your bachelor's degree. . . . Once that is accomplished, you will have to take the Praxis II exam to get certified in either math or science." (Defs.' Ex. 28, p1) She was told again several times in communications with Gottlieb that these were the requirements for the certification. Buell opted to earn her degree in Individual Studies, which she was granted in September of 2005, and completed the remaining required math credits after her graduation. In September 30, 2005, she was granted a DSAP to teach until she completed the certification requirements. This was renewed twice and will expire September 29, 2008. Buell has taken the Praxis II exam approximately twelve times and at present has not passed the examination. Buell was informed early on and has been notified several times since 2003 that if she fails to pass the Praxis II and thus achieve a 029 certification, she will be released from employment when her final DSAP expires. Buell stated in both her affidavit and her deposition that she does not believe Defendants were being malicious in their treatment of her.

Forte also took action towards meeting the requirements after receiving the February 28 email. During the 2003–2004 and 2004–2005 school years, Forte was not eligible for a DSAP and was moved to a position which did not require him to teach core mathematics, with no loss of pay or benefits, while he completed his course work for a bachelor's degree. Forte completed his course work for a bachelor's degree in March 2005, after which he completed the required 30 credits for his mathematics certification. Forte was issued his initial DSAP on September 14, 2005, effective August 15, 2005 to August 14, 2006. This DSAP was renewed twice and currently expires on August 14, 2008. Forte took and failed the Praxis II exam eleven times before passing it after the filing of this suit. He now claims that Defendants subjected him to unnecessary strain and expense in obtaining his 029 certification.

## III. Discussion

Plaintiffs allege that Defendants' conduct deprived them of equal protection of the laws and procedural due process of law in violation of the Fourteenth Amendment, and are suing Defendants in both their professional and individual capacities. Defendants have moved for summary judgment.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. CLASS OF ONE IN PUBLIC EMPLOYMENT

■ The Fourteenth Amendment of the United States Constitution provides that, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV*, § 1. The most common and traditional claim under the Fourteenth Amendment is one of classification-based discrimination; however, the Supreme Court has established a "class of one" equal protection claim in cases, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In the *Olech* case, the plaintiff argued that the municipality had demanded a larger than usual easement for connecting her property to the municipal water supply, and

therefore violated her rights by treating her differently than others who were similarly situated. *Id.* at 563, 120 S.Ct. 1073.

The Supreme Court recently held that the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause under a "class of one" theory. *Engquist v. Oregon Dept. of Agriculture*, —— U.S. ——, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). The court distinguished *Engquist* from the "class of one" claim in *Olech* which, "involved the government's regulation of property." *Id.* at 2153. Similarly, "the cases upon which the Court in *Olech* relied concerned property assessment and taxation schemes." *Id.* The Supreme Court reasoned that because an employer's decisions, "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments," *id.* at 2154, an employment discrimination claim could not be assessed in the same manner as *Olech*. **In this case, because the "class of one" theory was based on employment discrimination, the Court grants Defendants' motion for summary judgment (dkt.# 42) as to Plaintiffs' equal protection claim.**

### C. PROCEDURAL DUE PROCESS

■ Plaintiffs also claim that Defendants violated their procedural due process rights under the Fourteenth Amendment. "In order to prevail on a due process claim, a claimant must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived that party of the interest without due process of law." *Weinstein v. Albright*, 261 F.3d 127, 134 (2nd Cir.2001). While recognizing that liberty and property constitute protected interests, the Supreme Court stated that "the range of interests protected by procedural due process is not infinite."

*Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In this case the Court finds that neither of the Plaintiffs can prove that they have suffered a procedural due process violation. As to Forte, he has passed the Praxis II examination and has qualified for a 029 teaching certification. He will therefore be able to continue his teaching duties as a primary instructor of a core academic subject. By meeting these requirements Forte has acquired a property interest in his job such that if he is terminated in the future and not afforded notice and a hearing as to the termination, he will have a viable procedural due process claim. Since he has yet to be terminated, Forte can not demonstrate that he has suffered a deprivation of due process. As to Buell, she has yet to pass the Praxis II examination and is therefore teaching core mathematics under certifications other than that required by law. Given her inability to fulfill the requirements, Buell has not acquired a property interest in her job. Even if Buell does pass the most recent Praxis II examination given on July 26, 2008, she too has not suffered an adverse employment action and is unable to prove that she has been deprived of due process. **Accordingly, because the procedural due process claims of the Plaintiffs are premature the Court grants the Defendants motion for summary judgment (dkt.# 42).**[1]

## IV. Conclusion

For the foregoing reasons the Defendants' motion for summary judgment (dkt.# 42) is GRANTED. Judgment in favor of Defendants, Abigail Hughes, Nancy Pugliese and Julie Gottlieb as to

---

1. As no claims remain against Defendants the Court need not address the issue of qualified immunity.

each count of the complaint. The Clerk of the Court shall close this file.

**IT IS SO ORDERED.**