Maureen K. BUELL and Gregory P. Forte, Plaintiffs,

v.

Abigail L. HUGHES, Nancy Pugliese, and Julie Gottlieb, Defendants.

No. 3:07CV00468(DJS).

United States District Court, D. Connecticut.

Jan. 12, 2009.

John R. Williams, Katrena K. Engstrom, John R. Williams and Associates, LLP, New Haven, CT, for Plaintiffs.

Margaret Q. Chapple, Maria A. Santos, Attorney General's Office, Hartford, CT, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiffs, Maureen K. Buell ("Buell") and Gregory P. Forte ("Forte") (collectively, "the Plaintiffs") brought this action against the defendants, Abigail L. Hughes, Nancy Pugliese, and Julie Gottlieb (collectively, "the Defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of their Fourteenth Amendment rights to equal protection and due process. The Defendants moved for summary judgment on both the equal protection and due process claims. On July 31, 2008, the Court

issued its decision granting summary judgment in favor of the Defendants on all the Plaintiffs' claims. *See Buell v. Hughes,* 568 F.Supp.2d 235 (D.Conn.2008).

Now pending before the Court is the Plaintiffs' "Motion to Re–Argue Regarding Court's Decision Re: Defendant's [sic] Motion for Summary Judgment." (Dkt. # 56.) The Plaintiffs argue that the Court analyzed their equal protection claim under an equal protection theory that they were not alleging, and that the Court failed to analyze their equal protection claim under the equal protection theory they were alleging. In light of the relief sought by the Plaintiffs, the Court shall consider their motion to be a motion for reconsideration brought pursuant to Rule 7(c) of the Local Rules of Civil Procedure for the District of Connecticut. The Court grants the request to review the summary judgment decision. Nonetheless, for the following reasons, the summary judgment decision is **AFFIRMED,** and the relief requested in the motion for reconsideration **(dkt. # 56)** is **DENIED.**

## I. FACTS

Although the Court previously has set forth the facts in this case, *see Buell,* 568 F.Supp.2d at 238–40, and need not do so again in detail here, it shall nonetheless set forth the facts relevant to the Plaintiffs' motion. The Plaintiffs are teachers in the Connecticut Technical High School System ("CTHSS"). The Defendants are administrators either for Connecticut's Department of Education ("DOE") or CTHSS. In September 1979, CTHSS hired Buell as a part-time typing teacher. On September 1, 1981, Buell was hired full time to work at Kaynor Technical High School in Waterbury, Connecticut. She obtained tenure on September 1, 1984. During her employment with CTHSS, Buell taught math in addition to typing. Forte began his employment with CTHSS on November 13, 1998, and initially worked as a substitute and part-time trade math teacher at various technical high schools in Connecticut. On October 29, 1999, Forte was hired full time by CTHSS to work at Wilcox Technical High School. He obtained tenure on October 29, 2003.

The Plaintiffs each possessed a 091 teaching certification when they were hired. A 091 teaching certification certifies them to teach trade-related math, trade-related science and/or blueprint reading. Forte also possesses certifications as an Intermediate Administrator and Supervisor (092) and a Vocational Technical School Administrator (082), and has a coaching permit effective through 2010.

Connecticut regulations require that a teacher posses a 029 certification (core mathematics) to teach standard classroom math. Nevertheless, prior to January 2002, CTHSS permitted instructors who possessed a 091 teaching certification to teach core math and science classes. The Plaintiffs had been assigned to teach classroom math under this allowance.

In January 2002, Congress enacted the No Child Left Behind Act ("the Act"). Once the Act came into effect, the DOE determined that, in order for instructors to teach core math, science, or art classes at any of the technical high schools, those instructors must have a 029 certification. As of July 1, 2003, a total of seventy-four teachers held the 091 endorsement and were teaching math, science, or art; within this group, sixty-three of the instructors possessed a bachelor's degree and eleven did not. The DOE gave to these seventy-four teachers time to pursue their core academic certification. The DOE waived the requirement that existing teachers

take the Praxis I exam[1], as all seventy-four instructors had teaching experience that was considered to be the equivalent of the examination. The instructors were required, however, to meet all the remaining standards for certification.

When reviewing the CTHSS faculty to ensure that they met the Act's "highly qualified" standard for educators, the DOE separated those instructors who failed to meet all the certification requirements into three categories: (1) instructors possessing a full core academic certification who obtained their endorsement prior to the implementation of either the CONNTENT or Praxis II exams; (2) instructors possessing a 091 certification and a bachelor's degree; and (3) instructors possessing a 091 certification who had not obtained a bachelor's degree. Instructors who fell in the first category were permitted to waive the Praxis II requirement to obtain the "highly qualified" status, as they already held the 029 certification. These instructors were permitted to demonstrate their competency either by holding major or master's degree in their core subject area, or by passing the High Objective Uniform State Standard of Evaluation ("HOUSSE"). HOUSSE allows an instructor to demonstrate her knowledge of a specific subject through observation by a DOE administrator, who must be satisfied that the instructor is "highly qualified" to teach that subject.

Instructors who fell in the second and third categories, however, were to complete the requirements for a 029 certification, which included passing the Praxis II exam. An instructor already in possession of a bachelor's degree and at least 12 credits in a core subject area was issued a

durational shortage area permits ("DSAP"), allowing that instructor to teach in the core area while pursuing the completion of the 029 certification requirements. A DSAP can be reissued no more than two times. The instructors from the second category who did not meet the requirements for a DSAP, and all the instructors from the third category, were placed in positions for which they held the appropriate certification for the 2003–2004 school year.

After receiving notification of the new teaching requirements, Buell sought a degree from Charter Oak State College in general studies. During this time, Buell often communicated with Julie Gottlieb, who told Buell a number of times what was required of her to receive certification. Buell ultimately earned her degree in Individual Studies in September 2005, and completed the remaining required math credits after graduation.

On September 20, 2005, Buell was granted a DSAP to teach until she completed the remaining certification requirement, namely, taking and passing the Praxis II exam. Although Buell has taken the Praxis II exam approximately twelve times, she has not passed it. Buell's DSAP, which was renewed twice, expired on September 29, 2008.

During the 2003–2004 and 2004–2005 school years, Forte was not eligible for a DSAP. Thus, while he completed his course work for a bachelor's degree, he was moved to a position, without loss of pay or benefits, that did not require him to teach core mathematics. Forte earned his bachelor's degree in March 2005, and completed the remaining required math credits after graduation. Forte was then is-

---

1. Since January 1, 1995, the Praxis I assessment has been Connecticut's reading, writing, and mathematics competency examination for teachers, and the Praxis II assessment has been Connecticut's subject knowledge and competency examination for teachers. Prior to January 1, 1995, Connecticut used the CONNTENT assessment for teachers.

384

sued a DSAP, effective from August 15, 2005 to August 14, 2006, so that he could complete the remaining certification requirement, namely, taking and passing the Praxis II exam. He took and failed the Praxis II exam eleven times, but ultimately passed the exam after filing this lawsuit.

## II. DISCUSSION

■■■ "A motion for reconsideration is committed to the sound discretion of the court." *Kregos v. Latest Line, Inc.*, 951 F.Supp. 24, 26 (D.Conn.1996). In general, the three grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (internal quotation marks omitted). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000). In other words, "[a] motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *SPGGC, Inc. v. Blumenthal*, 408 F.Supp.2d 87, 91 (D.Conn.2006) (internal quotation marks omitted). "It is also not appropriate to use a motion to reconsider solely to relitigate an issue already decided." *Id.* at 91–92.

The Plaintiffs now ask the Court to reconsider its decision to grant summary judgement in favor of the Defendants on the equal protection claim.[2] According to

**2.** The Plaintiffs' motion for reconsideration also asks the Court to reconsider its decision to grant summary judgment on the due process claim. The motion mentions that the Plaintiffs have a property interest in their employment as mathematics teachers, and that they have suffered adverse employment actions by being demoted. The Plaintiffs also state that Forte is now being retaliated against by filing this lawsuit. For a number of reasons, the Court need not analyze these points in detail. First, in the summary judgement decision, the Court discussed the property interest/adverse employment actions issues. The Court did not "overlook" these topics. Moreover, the Plaintiffs' additional descriptions of the adverse employment actions taken against the Plaintiffs would not persuade the Court to grant a motion for reconsideration because these descriptions were not included in the Plaintiffs' memorandum of law in opposition to summary judgment. This is not an instance of the Court overlooking issues, but of the Plaintiffs attempting to plug gaps in their original argument so that they can re-litigate the due process claim. Second, Forte's claim that he is being retaliated against for filing this lawsuit is outside the scope of this case. In this action, Forte alleged that the Defendants violated his equal protection and due process rights. At no time was there a First Amendment retaliation (or any other type of retaliation) claim before the Court. As the Court never "considered" this retaliation claim in the first place, it cannot "reconsider" the claim now. It would be wholly inappropriate for the Court to discuss this issue here, especially when the Court has already ruled on summary judgment. Third, and most importantly to the Court, although the Plaintiffs bring up the due process and retaliation points in their motion for reconsideration, their memorandum of law is silent as to these points. The Plaintiffs provide no legal analysis or argument for these issues, and discuss only the equal protection claim. Thus, they have essentially abandoned any argument with regard to reconsideration of the due process claim. Consequently, with regard to

the Plaintiffs, the Court erred by analyzing their equal protection claim under the so-called "class-of-one" principle of equal protection. The Plaintiffs maintain that they were not alleging a class-of-one equal protection claim, but rather an equal protection claim based on their membership in a group of teachers with 091 certifications. Based upon the Plaintiffs' assertion, the Court has agreed to review its summary judgment decision. Nevertheless, upon such reconsideration, the Court concludes that it granted summary judgment appropriately.

First, the Court does not agree with the Plaintiffs' description of their equal protection claim. As the Defendants point out, Paragraph 9 of the Plaintiffs' complaint clearly contains language indicating a class-of-one equal protection claim. The Plaintiffs alleged that the Defendants "intentionally and irrationally" applied the certification requirements upon the Plaintiffs in a manner differing from the way those requirements were applied to other "identically situated" teachers. The Supreme Court's description of class-of-one equal protection claims is as follows: "equal protection claims [may be] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

The comparison of "similarly situated" individuals who are irrationally treated differently is a cornerstone of the class-of-one equal protection analysis, and the Plaintiffs use the "identically situated" language three times in Paragraph 9 of the complaint.

Additionally, in their summary judgment motion, the Defendants grounded their equal protection argument expressly on the class-of-one principle, and the Plaintiffs' opposition memorandum did not challenge the Defendants' characterization of the claim. Indeed, the Plaintiffs, in their own opposition memorandum, specifically stated that "*[s]imilarly situated* teachers . . . were treated differently." (Dkt. # 45, p. 9) (emphasis added). In the Court's view, the Plaintiffs were alleging a class-of-one equal protection claim.[3] As the Court noted in its summary judgment decision, the Supreme Court has expressly held that class-of-one equal protection claims are not applicable in the public employment context. *See Engquist v. Oregon Dep't of Agr.,* —— U.S. ——, 128 S.Ct. 2146, 2151, 170 L.Ed.2d 975 (2008).

■■ Second, even if the Court were to give the Plaintiffs the benefit of the doubt and assume that, contrary to the perception created by the Plaintiffs' own submissions, they were not alleging a class-of-one equal protection claim, their equal protection claim would nevertheless fail. The Fourteenth Amendment to the United

the motion for reconsideration, the only issue before the Court is the Plaintiffs' equal protection argument.

3. The Court points out that, although this style of equal protection claim is titled "class-of-one," such a claim may be brought by groups comprised of more than one plaintiff. As the Supreme Court stated in *Olech,* "[w]hether the complaint alleges a class of one or of five is of no consequence because . . . the number of individuals in a class is immaterial for equal protection analysis." *Olech,* 528 U.S. at 564 n. 1, 120 S.Ct. 1073; *see Cobb v. Pozzi,* 363 F.3d 89, 110–12 (2d Cir.2004) (addressing a "class-of-one" claim brought by two corrections officers); *Hayes v. City of Torrington,* No. 3:02CV1542(MRK), 2004 WL 1498135, at *1 (D.Conn. May 26, 2004) ("In their pleadings, Defendants have suggested that 'class of one' claims are limited to classes of exactly one person. Defendants are wrong").

States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has held that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "Traditionally, the Equal Protection clause of the Fourteenth Amendment protects against [classification-based] discrimination." *Inturri v. City of Hartford*, 365 F.Supp.2d 240, 248 (D.Conn.2005). That is to say, the courts

> apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose.... Classifications based on race or national origin ... and classifications affecting fundamental rights ... are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.

*Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (internal citations omitted). As the Second Circuit has pointed out, rational basis review generally applies, whereas the higher forms of review (i.e., strict scrutiny and intermediate scrutiny) apply in the "limited circumstances" where "the subject of the different treatment is a member of a class that historically has been the object of discrimination." *Able v. United States*, 155 F.3d 628, 631–32 (2d Cir.1998).

The "class" to which the Plaintiffs claim they belong is the group of instructors with the 091 certification. There is no dispute that this class is entitled to the lowest level of scrutiny, namely, a rational basis review. According to the Plaintiffs, their equal protection rights were violated because Connecticut "irrationally" required this class of instructors to take the Praxis II examination in order to obtain the 029 certification to teach standard classroom math.

Despite the Plaintiffs' contentions, the Court cannot consider this conduct irrational. The federal government, via the Act, imposed new standards upon the States with regard to their school systems. Connecticut, in an effort to ensure that its teachers were "highly qualified," required all those teaching core math, science, or art at any of the technical high schools to obtain the 029 certification. For instructors possessing a 091 certification, this included taking the Praxis II exam. It is not irrational for Connecticut to impose certification requirements upon its teachers to ensure that they are qualified to teach. Indeed, the education of children is certainly a legitimate state interest, and the teacher certification process is one way in which Connecticut secures that interest.

The Plaintiffs' contend, though, that they had to take the Praxis II exam to receive a 029 certification whereas other instructors, whom the Plaintiffs consider "less qualified" than they, received their 029 certifications without having to take the Praxis II exam. The Plaintiffs have specified seven teachers, Janet Wagner ("Wagner"), Pam Hill ("Hill"), Diane Chaconis ("Chaconis"), Paula Paccadolmi ("Paccadolmi"), Steven Wodarski ("Wodarski"), Wendi Meyers–Wight ("Meyers–Wight"), and Charles Goggi ("Goggi"), to support their claim. The Court is not persuaded by the Plaintiffs' comparison to these instructors. Wagner, Hill, Chaconis, Paccadolmi, Meyers–Wight, and Goggi already had received their 029 [4] certifica-

---

4. Paccadolmi obtained a 026 certification, not a 029 certification, because her subject is

tions well before the Act became law.[5] Nevertheless, the Plaintiffs argue that their right to equal protection was violated because these instructors received their 029 certifications without having to take the Praxis II exam. As Defendants point out, however, these instructors received their 029 certifications before the implementation of either the Praxis II or CONNTENT exams. It follows, then, that they could not have been required to take the Praxis II or CONNTENT exam in order to receive a 029 certification.

The Praxis II assessment—an exam given to teachers to show competency in a particular subject—is a stepping stone to receiving a 029 certification. The teachers named by the Plaintiffs had 029 certifications; however they had not taken the Praxis II exam because it was not required of them at the time they received their certifications. Thus, to satisfy the Act's "highly qualified" standard, the DOE opted to allow these already-certified teachers to demonstrate their qualifications through the HOUSSE plan. In the Court's view, this was not unreasonable. To hold otherwise would mean that the DOE should have required these teachers to take a test to receive a certification they already had.

The Plaintiffs also point out that the way in which Wagner, Hill, and Chaconis received their 029 certifications, in contrast to the requirements imposed upon themselves, demonstrates an equal protection violation. According to the Plaintiffs, Wagner, Hill, and Chaconis not only did not take the Praxis II exam, they did not have degrees in math, yet were able to "cross endorse" to teach math. A cross endorsement enables a teacher certified in one area to obtain additional endorsements on her teaching certificate, thus adding areas of specialization in which the certificate holder is authorized to teach.

The Plaintiffs' argument here is also of no avail. The Court has already found that it was not unreasonable for the DOE to not require teachers with the 029 certification to take the Praxis II exam. With regard to how Wagner, Hill, and Chaconis received their 029 certifications, the Plaintiffs are essentially asking the Court to act as an overseer of the DOE's teaching qualification standards. Wagner received her 029 endorsement in 1983; Hill in 1983, and Chaconis in 1984. Buell and Forte sought their 029 certifications approximately twenty years later. Wagner, Hill, and Chaconis were allowed to cross endorse to receive the 029 certifications, yet the Plaintiffs were not. Thus, it is clear from the record that the requirements for a 029 certification have changed in those twenty years.

The Court cannot say, though, that it was unreasonable for the DOE to impose newer, more rigorous standards for the attainment of a 029 endorsement, especially considering that the federal government had imposed more stringent standards upon state school systems. The Court is aware that Buell was not a new teacher when she sought her 029 endorsement. Nevertheless, the endorsement she sought was new to her, and the standards for obtaining that endorsement had changed since Wagner, Hill, and Chaconis received their endorsements. There is nothing to indicate that Wagner, Hill, and Chaconis did not meet the requirements for their

social studies, not math. For the purposes of this lawsuit, however, the distinction is immaterial.

5. Wodarski received his bachelor's degree in 2005, obtained a DSAP that year, passed the Praxis II exam under the DSAP, and became

fully certified in late 2005. The Court fails to see how using Wodarski as an example helps the Plaintiffs. If anything, Wodarski is in the same class as the Plaintiffs because he, like they, had to pass the Praxis II exam to get his certification.

029 certifications at the time they received them. Simply imposing newer, more rigorous qualification requirements for teachers does not violate equal protection.

The Court again points out that, despite their assertion to the contrary, the Plaintiffs' equal protection claim appears to be a class-of-one claim because it consistently resonates with the hallmarks of a class-of-one equal protection claim. For example, the fact that the Plaintiffs have compared themselves to individuals to whom they claim they were "similarly situated" indicates that their claim is a class-of-one equal protection claim, not a classification-based equal protection claim. Indeed, the Plaintiffs' assertion that this is a classification-based equal protection claim becomes more illogical when one realizes that at least some of the people to whom the Plaintiffs compare themselves *belong to the same class as the Plaintiffs*. The Plaintiffs admitted as such in their summary judgment opposition, arguing that the Defendants "erected one set of requirements to obtain a core academic subject certification for experienced teachers with the trade related certification (091) and a different set of requirements for 091 teachers who also held another non-core academic certification." (Dkt. # 45, p. 10.) The Court fails to see how this is a classification-based claim when the alleged discrimination does not appear to have been related to membership in a class.

 Nonetheless, the Court, being cognizant that the Plaintiffs should know what type of claim they are asserting, gave the Plaintiffs the benefit of the doubt and analyzed their claim as if it were a classification-based equal protection claim. It was for this reason that the Court reviewed its summary judgment decision and provided a classification-based equal protection analysis. Under this analysis, however, the Plaintiffs' claim fails.[6] The Court rejects the Plaintiffs' arguments that the Defendants "irrationally abused their discretionary authority." From what the Court can discern, the Defendants had a rational basis for their actions.

The Court does not intend to imply that the Plaintiffs are bad teachers. Teaching is a noble profession, and it is obvious that the Plaintiffs (especially Buell, with approximately twenty-seven years of experience as a full-time teacher) are very dedicated to their profession. Connecticut can, however, establish the standards for its teachers, and in light of federal law, newer and tougher standards were imposed upon Connecticut's teachers. It is not the role of the Court to micro-manage the administration of the school system. Consequently, although the Court has reviewed its decision to grant summary judgment in favor of the Defendants on the equal protection claim, it nevertheless affirms that decision.

## III. CONCLUSION

For the foregoing reasons, the summary judgment decision is **AFFIRMED,** and the

---

6. The Court also points out that, even if *Engquist* did not bar a class-of-one claim in this context, the Plaintiffs' claim would fail under the substantive class-of-one analysis. A class-of-one claim requires plaintiffs to compare themselves to others who are "similarly situated." "Similarly situated" is a high standard, requiring plaintiffs to show that their circumstances are prima facie identical to the circumstances of the people to whom they compare themselves. *See Neilson v. D'Angel-is,* 409 F.3d 100, 104–05 (2d Cir.2005). The Plaintiffs have not met this burden; for example, unlike the Plaintiffs, most the people to whom the Plaintiffs compared themselves had obtained 029 certifications many years prior to the facts relevant in this case. In addition, the class-of-one analysis is essentially an adaptation of the rational review standard, and the Court has found that the Plaintiffs' arguments in that regard fail.

389

relief requested in the Plaintiffs' motion for reconsideration (**dkt. #56**) is **DE-NIED**. **This file shall remain closed.**